David ABRAHAM, et al., Petitioners, Appellants,

v.

COUNTY OF HENNEPIN, Respondent.

Nos. CX–00–835, C7–00–1652.

Supreme Court of Minnesota.

Feb. 7, 2002.

Leslie L. Lienemann, Burnsville, Attorney for Appellants.

Amy Klobuchar, Hennepin County Attorney, Martin D. Munic, Assistant Hennepin County Attorney, Minneapolis, Attorneys for Respondent.

Douglas A. Hedin, Hedin & Goldberg, P.A., Minneapolis, Attorney for Amicus Curiae National Employment Lawyers Association.

## OPINION

ANDERSON, RUSSELL A., Justice.

In separate but consolidated actions appellants David Abraham and Scott Lennander brought claims seeking only money damages against their former employer, respondent Hennepin County, for retaliatory discharge in violation of the Whistleblower Act, Minn.Stat. § 181.932, subd. 1(a) (2000), and the Minnesota Occupational Safety and Health Act (MOSHA), Minn. Stat. § 182.654, subd. 9 (2000).[1]

The district court initially granted the county's motion for summary judgment, dismissing all claims, and appellants appealed dismissal of the whistleblower and MOSHA claims. The court of appeals remanded, directing the district court to determine whether retaliation more likely than not motivated the county's discharges, even if the county also had a legitimate reason for the discharges.

On remand, the district court granted the county's motion for partial summary judgment dismissing the whistleblower claims, concluding that the whistleblower claims and MOSHA claims arose out of the same facts, involved the same proof and the same damages, and thus, could not be concurrently pursued. The court denied appellants' request for trial by jury. Following trial to the court, the district court concluded that the county had not violated MOSHA by discharging appellants in retaliation for complaining to their supervisors and to the Occupational Safety and Health Division of the Minnesota Department of Labor and Industry (Safety and Health Division), instead finding that the county discharged appellants for intentionally introducing chemicals into their work area on the day of an inspection by the Safety and Health Division, and entered judgment dismissing appellants' MOSHA claims.

On the second appeal, the court of appeals affirmed the district court's decision denying appellants the right to trial by jury but reversed the district court's decision dismissing appellants' whistleblower claims and remanded. *Abraham v. County of Hennepin,* 622 N.W.2d 121, 129–30 (Minn.App.2001). The court of appeals concluded that the Minnesota Constitution generally guarantees a right to jury trial for actions that were recognized as common law actions when the constitution was adopted. 622 N.W.2d at 126. The court also concluded that when the legislature creates a new action that was not recognized as a common law action when the constitution was adopted, it is for the legislature to determine whether the right to a jury trial should be granted or withheld. 622 N.W.2d at 125. The court concluded that because retaliatory discharge actions under the Whistleblower Act and MOSHA did not exist at common law when the constitution was adopted, appellants have no constitutional right to jury trial. 622 N.W.2d at 126.

We conclude that there is a constitutional guarantee to trial by jury for appellants'

---

1. Abraham also brought a claim under the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363.14, subd. 1 (2000), and both appellants alleged defamation. Those claims were dismissed by the district court, and appellants did not challenge the dismissal.

actions. We affirm in part and reverse in part the decision of the court of appeals, vacate the judgment of the district court, and remand for jury trial.

### I.

In April 1995 appellants were discharged from employment as offset equipment operators in Hennepin County's print shop. According to the county, appellant Lennander was discharged for intentionally pouring chemicals on carpeting in the work area during an inspection on March 22, 1995, by the Safety and Health Division; appellant Abraham was discharged for intentionally spraying chemicals into the air during the same inspection. Appellants allege that the county discharged them in retaliation for their complaints to their supervisors in February 1995 that fumes in the workplace were making them ill and in retaliation for appellant Abraham's written complaint on March 2, 1995, to the Safety and Health Division, which resulted in the inspection.[2] Abraham complained to the Safety and Health Division that the employees of the county's print shop believed they were faced with an immediate health threat due to chemicals in the air. Appellants were subsequently discharged, and their claims for retaliatory discharge followed.

### II.

■ We first address the issue of whether an employee may pursue concurrently in the same action a whistleblower[3] and a MOSHA[4] retaliatory discharge claim when both claims seek only money damages and arise out of the same facts.[5] Whether statutory claims arising out of the same facts may be pursued concurrently is a legal issue, and we review legal issues de novo. *See Hibbing Educ. Ass'n v. Pub. Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

■ Ordinarily, unless a statute provides that its remedy is exclusive, a party

2. The inspector cited the county for two violations, both unrelated to air quality.

3. The Whistleblower Act, Minn.Stat. §§ 181.931–.935 (2000), provides a cause of action for an employee against the employer when the employee is discharged from employment for blowing the whistle. The Whistleblower Act prohibits an employer from discharging, disciplining, threatening, otherwise discriminating against, or penalizing an employee who in good faith reports a violation or suspected violation of law or rule adopted pursuant to law. Minn.Stat. § 181.932, subd. 1. The act provides an employee who has been injured by a violation of section 181.932 with the remedy of bringing a civil action to recover any and all damages recoverable at law, together with· costs and disbursements, including reasonable attorney fees, and such injunctive and other equitable relief as determined by the court, in addition to any remedies otherwise provided by law. Minn.Stat. § 181.935(a).

4. MOSHA, Minn.Stat. ch. 182 (2000), also provides a remedy for a whistleblower-type claim when the reported violation of law implicates MOSHA. The act provides that no employee shall be discharged or in any way discriminated against because the employee has filed a complaint, or instituted or caused to be instituted an inspection under or related to the act, or because of the exercise by the employee of any rights afforded by the act. Minn.Stat. § 182.654, subd. 9. Any employee believed to have been discharged or otherwise discriminated against for exercising any of the rights afforded by the act may file a complaint with the commissioner of labor and industry, who shall cause an investigation to be made as the commissioner deems appropriate, which could result in a hearing before an administrative law judge and injunctive relief. Minn.Stat. § 182.669, subd. 1 (2000). MOSHA also provides that "[a]n employee may bring a private action in the district court for relief under [section 182.669]." *Id.*

5. We are not presented with the issue of concurrent claims that seek different equitable relief under two different statutes, which may present a different issue.

should not be prevented from bringing concurrent claims. *See, e.g., Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 377–79 (Minn.1990) (holding that both statutory cause of action for sexual harassment and common law cause of action for battery can be maintained even though both claims arise from same set of operative facts); *Cox v. Crown CoCo, Inc.*, 544 N.W.2d 490, 496–97 (Minn.App.1996) (allowing claim for retaliatory discharge under both the Whistleblower Act and MOSHA); *State by Humphrey v. Baillon Co.*, 503 N.W.2d 799, 802 (Minn.App.1993) (rejecting argument that attorney fee provisions of Minn.Stat. ch. 117 are exclusive method of recovering attorney fees in eminent domain proceedings because those provisions do not expressly provide that they are exclusive method of recovering attorney fees in eminent domain proceedings). It is not for this court to deny a plaintiff the right to pursue a claim that the legislature has provided. Of course, a plaintiff may not recover duplicative money damages. *Wirig*, 461 N.W.2d at 379.

■ In *Williams v. St. Paul Ramsey Medical Center*, 551 N.W.2d 483 (Minn. 1996), we held that an employee may not seek redress for the same allegedly discriminatory practices on the same facts under both the MHRA and the Whistleblower Act, because the MHRA expressly provides that its procedure, while pending, shall be exclusive.[6] 551 N.W.2d at 486.

*Williams* is clearly distinguishable from the instant case in that neither the Whistleblower Act nor MOSHA includes an exclusive remedy provision. *See* Minn.Stat. §§ 181.935 & 182.669, subd. 1. In fact, the Whistleblower Act expressly provides that its remedies will be "[i]n addition to any remedies otherwise provided by law."[7] Minn.Stat. § 181.935(a).

The district court concluded that appellants could pursue claims only under MOSHA because the specific provisions of MOSHA prevail over the more general provisions of the Whistleblower Act. The district court relied on the rule of statutory construction that provides that if an irreconcilable conflict exists between a general provision of law and a specific provision of law, then the specific provision of law prevails, unless the general provision was enacted later in time and the legislature made it clear that the general provision was to prevail, Minn.Stat. § 645.26, subd. 1 (2000). Section 645.26, subdivision 1, however, is applicable only when laws are irreconcilable. The provisions of the Whistleblower Act and MOSHA are not irreconcilable. We noted in *Williams* that the MHRA and the Whistleblower Act are irreconcilable because of the MHRA's exclusive remedy provision. 551 N.W.2d at 485. Here, neither the Whistleblower Act nor MOSHA has an exclusive remedy provision; in fact, the

---

**6.** "[A]s to acts declared unfair by section 363.03, the procedure herein provided shall, while pending, be exclusive." Minn.Stat. § 363.11 (2000).

**7.** While the county correctly points out that this provision failed to allow concurrent claims in *Williams*, we disagree that the provision therefore has no effect here. In *Williams*, the provision for other remedies in the Whistleblower Act was trumped by the exclusive remedy provision of the MHRA. *See* 551 N.W.2d at 485. There is no exclusive remedy provision here, so we give full effect

to the provision in the Whistleblower Act that provides for other remedies. Moreover, the amendment by the legislature in 1987 to remove language from MOSHA that expressly provided for other remedies did not render MOSHA exclusive. *See* Act of Apr. 30, 1987, ch. 46, § 9, 1987 Minn. Laws 69, 70–71. Had the legislature intended the remedy under MOSHA to be exclusive, it could have included an express exclusive remedy provision at the time of the amendment, as it has done in other statutes, such as the MHRA.

Whistleblower Act expressly provides that its remedies are not exclusive. Minn.Stat. § 181.935(a).

■ We hold that claims for retaliatory discharge, seeking only money damages, brought under the remedy provisions of both the Whistleblower Act, Minn.Stat. § 181.935(a), and MOSHA, Minn.Stat. § 182.669, subd. 1, may be pursued concurrently in one action.

### III.

■ We turn next to the issue of whether Article I, Section 4 of the Minnesota Constitution guarantees the right to trial by jury in an action, such as this, in which an employee seeks only money damages for retaliatory discharge from employment in violation of the Whistleblower Act and MOSHA. This court reviews de novo a lower court's interpretation and application of the Minnesota Constitution. *Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 148 (Minn.2001).

■ Neither the Whistleblower Act nor MOSHA specifically provides for the right to jury trial in its remedy provision, *see* Minn.Stat. §§ 181.935, 182.669, subd. 1, so that right, if it exists, must arise under the constitution, *Ewert v. City of Winthrop*, 278 N.W.2d 545, 550 (Minn.1979). Article I, Section 4 of the Minnesota Constitution guarantees that, "[t]he right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy." Minn. Const.

art. I, § 4. This provision is intended to continue, unimpaired and inviolate, the right to trial by jury as it existed in the Territory of Minnesota when our constitution was adopted in 1857. *See Olson*, 628 N.W.2d at 148 (holding that promissory estoppel is equitable action in Minnesota and therefore does not carry attendant right to jury trial); *Whallon v. Bancroft*, 4 Minn. 109, 111 (Gil.70, 74) (1860).

Appellants argue that they are entitled to have their actions tried to a jury because their actions are legal in nature and seek the recovery of money only.[8] The county argues that neither the Whistleblower Act nor MOSHA provides for trial by jury, and that there is no constitutional right to trial by jury since these actions, created by statute, did not exist when the constitution was adopted.[9] The county argues that when the constitution was adopted, the common law did not permit actions for wrongful discharge against employers, and the doctrine of sovereign immunity forbade actions against a municipality. According to the county, since these actions were nonexistent, in fact not allowed, when the constitution was adopted, there can be no right to trial by jury.

In *Bond v. Welcome*, 61 Minn. 43, 63 N.W. 3 (1895), we identified those cases at law that are guaranteed the right to jury trial under our constitution as actions at law for the recovery of money only, and we concluded that actions that are equitable in nature are not entitled to jury trials:

**8.** Both the Whistleblower Act and MOSHA also provide for equitable relief, Minn.Stat. §§ 181.935(a) & 182.669, subd. 1, but appellants did not seek equitable relief.

**9.** As a threshold matter, the county argues that appellants conceded at the district court that they have no right to jury trial on their MOSHA claims. The record below suggests that appellants did not concede that they have no right to jury trial on their MOSHA claims,

but instead argued before the district court that if the county's argument for no right to jury trial under MOSHA were applied to appellants' whistleblower claims, then the county's own argument would suggest a right to jury trial under the Whistleblower Act. Moreover, in their memorandum opposing partial summary judgment appellants did argue that they were entitled to a jury trial.

If [the action] is an action at law for the recovery of money only, the plaintiff is entitled absolutely to a trial by jury, although it involves the examination of a long account on either side, for the constitution guaranties to him this right. But if the action is equitable in its nature * * * the plaintiff is not entitled to a jury trial * * * for in such cases, at the time of the adoption of the constitution, there was no absolute right of trial by jury.

*Id.* at 43–44, 63 N.W. at 3–4 (citations omitted). A thread runs through our line of decisions following *Bond* and culminating with *Olson* that has consistently acknowledged the distinction between actions at law, for which the constitution guarantees a right to jury trial, and actions in equity, for which there is no constitutional right to jury trial. *See Rognrud v. Zubert,* 282 Minn. 430, 434, 165 N.W.2d 244, 247 (1969) (concluding that causes of action that are legal, as opposed to equitable, are entitled to jury trial); *Landgraf v. Ellsworth,* 267 Minn. 323, 327, 126 N.W.2d 766, 768 (1964) (concluding that suit on contract to recover money is legal action, and as such, triable to jury); *Westerlund v. Peterson,* 157 Minn. 379, 384, 197 N.W. 110, 112 (1923); *Hawley v. Wallace,* 137 Minn. 183, 187, 163 N.W. 127, 129 (1917) ("The term 'cases at law' as used in the Constitution has been construed as referring to ordinary common-law actions as distinguished from equity or admiralty causes and special proceedings such as quo warranto, mandamus and the like"); *Morton Brick & Tile Co. v. Sodergren,* 130 Minn. 252, 254–55, 153 N.W. 527, 528 (1915) (holding that in actions originally actions at law either party may demand jury trial, but in equitable actions there is no right to jury trial); *see also Tyroll v. Private Label Chems., Inc.,* 505 N.W.2d 54, 57 (Minn.1993).

In *Tyroll,* we held that the third-party defendant tortfeasor was entitled to a jury trial in a subrogation claim brought against the third-party defendant by an employer after settlement of the employee's negligence suit left only the employer's subrogation claim for trial. 505 N.W.2d at 56. We concluded that the controversy was a routine negligence personal injury action, in which one party sought damages resulting from another party's failure to exercise reasonable care. *Id.* at 57. We concluded that the claims were common law issues triable to a jury because of the essential nature and character of the controversy, even though the Workers' Compensation Act statutorily created the right of the employer-insurer to intervene and maintain the action as a subrogee long after our constitution was adopted. *See id.*

■ This court has not held that only those causes of action that were identified in 1857 as causes of action at law carry today an attendant right to jury trial. Rather, the constitutional right exists for the same type of action for which a jury trial existed when the constitution was adopted, any cause of action *at law.* *See Olson,* 628 N.W.2d at 149; *Tyroll,* 505 N.W.2d at 57; *Bond,* 61 Minn. at 43–44, 63 N.W. at 3–4. The constitution is not frozen in time in 1857, incapable of application to the law as it evolves. The nature and character of the controversy, as determined from all the pleadings and by the relief sought, determines whether the cause of action is one at law *today,* and thus carries an attendant constitutional right to jury trial. *Olson,* 628 N.W.2d at 152; *Tyroll,* 505 N.W.2d at 57; *Morton,* 130 Minn. at 255, 153 N.W. at 528; *see also Westerlund,* 157 Minn. at 383, 197 N.W. at 111.

While it has been suggested that wrongful discharge is contrary to the common

law tradition of employment at will and therefore cannot be a cause of action known at the common law, we disagree. The nature of the employment relationship at the time the constitution was adopted is immaterial to a determination of whether a claim for retaliatory discharge *today* is a cause of action at law, and thus carries an attendant constitutional right to jury trial.

In *Olson* we considered whether a claim for promissory estoppel carries a constitutional right to jury trial, and we held that there is no such right to trial by jury, because the action is equitable in nature as distinguished from legal in nature. 628 N.W.2d at 153. We traced the historical progression of promissory estoppel not to determine whether promissory estoppel was a cause of action at law in 1857, but only to determine whether promissory estoppel evolved in Minnesota as an equitable or legal cause of action, and therefore whether promissory estoppel is a cause of action at law or a cause of action in equity in Minnesota *today*, for in different jurisdictions the cause of action for promissory estoppel evolved differently. *See Olson*, 628 N.W.2d at 150–52. After tracing the development of promissory estoppel, we concluded that in Minnesota promissory estoppel evolved as an equitable action, for which there is no right to trial by jury. *Id.* at 152.

We examine the nature and character of the controversy in this case, as determined from the pleadings and by the relief sought. Appellants claim they were discharged in retaliation for their complaints concerning the air quality in their workplace. Appellants' retaliatory discharge claims are similar to the employee's claim in *Phipps v. Clark Oil & Refining Corp.*,

408 N.W.2d 569 (Minn.1987), *aff'g* 396 N.W.2d 588 (Minn.App.1986), which we identified as a wrongful discharge claim.[10] *See* 408 N.W.2d at 571.

Like the claim in *Phipps*, the claims for retaliatory discharge in this case are a species of the common law action of wrongful discharge. *See id.; see also Phipps*, 396 N.W.2d at 590–91 and citations therein. Our examination of wrongful discharge, like the examination of promissory estoppel in *Olson*, need not look to 1857 to determine whether wrongful discharge existed then as a cause of action at law. Instead, we need only determine whether a claim for wrongful discharge seeking only money damages is an action at law or an equitable action. Tracing the historical development of·wrongful discharge from our earliest decisions to our decision in *Phipps* is helpful in determining whether wrongful discharge seeking only money damages is an action at law or an equitable action.

In Minnesota, wrongful discharge existed at common law as early as 1861. *Mackubin v. Clarkson*, 5 Minn. 247 (Gil.193) (1861). In early decisions by this court we recognized that an employee, under a breach-of-contract theory, could bring an action for money damages in a district court for wrongful termination of employment. *Smith v. Herz Mfg. Co.*, 92 Minn. 254, 254–55, 99 N.W. 1134, 1134 (1904) (concluding that question whether employee was discharged or voluntarily left employment in wrongful discharge action was "a question for the jury"); *Horn v. W. Land Ass'n*, 22 Minn. 233, 236–37 (1875) ("[A]s to the alleged abandonment of the contract by both parties, or by the defendant with the acquiescence or consent of

---

**10.** In *Phipps,* the employee alleged that he had been discharged in retaliation for his refusal to engage in unlawful activity. 408 N.W.2d at 570. We allowed the employee to

pursue his claim for retaliatory discharge, acknowledging that the common law protects those fired for their refusal to violate the law. *Id.* at 571.

plaintiff, this was a matter for the jury to determine upon the evidence."); *see also Healy v. Mannheimer*, 74 Minn. 240, 240, 76 N.W. 1126, 1126 (1898); *McCormick v. Louden*, 64 Minn. 509, 509–10, 67 N.W. 366, 366–67 (1896); *Metzdorf v. W. Supply Co.*, 60 Minn. 365, 365–66, 62 N.W. 397, 397–98 (1895); *Smith v. St. Paul & Duluth R.R. Co.*, 60 Minn. 330, 332, 62 N.W. 392, 393 (1895); *Bolles v. Sachs*, 37 Minn. 315, 317–18, 33 N.W. 862, 862–64 (1887); *Williams v. Anderson*, 9 Minn. 50 (Gil.39) (1864). In those actions, plaintiffs sought legal remedies in the form of money damages in courts of law. As contract actions brought in a court of law for money damages, claims for wrongful discharge were causes of action at law, and they were consequently tried to juries.

In 1936 this court recognized that, absent an employment contract for a specified term, employment is "at will," meaning either the employee or the employer may end the employment relationship at any time for any reason. *See Skagerberg v. Blandin Paper Co.*, 197 Minn. 291, 294–95, 266 N.W. 872, 873–74 (1936). However, the common law doctrine of employment at will has been narrowed in the 66 years since *Skagerberg*. In many jurisdictions, courts have recognized an exception to the doctrine of employment at will, allowing a cause of action when the employee is wrongfully discharged.[11]

In *Phipps*, 396 N.W.2d at 590–94, the court of appeals recognized an exception to the doctrine of employment at will when an employee is terminated for refusing to engage in unlawful conduct.[12] After we

11.  *See, e.g., Cummins v. EG & G Sealol, Inc.*, 690 F.Supp. 134, 136 (D.R.I.1988) (citing *Volino v. General Dynamics*, 539 A.2d 531 (R.I. 1988)); *Knight v. Am. Guard & Alert, Inc.*, 714 P.2d 788, 792 (Alaska 1986); *Petermann v. Int'l Bhd. of Teamsters*, 174 Cal.App.2d 184, 344 P.2d 25, 27–28 (1959) (refusing to commit perjury); *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 563 P.2d 54, 57 (1977); *Palmateer v. Int'l Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876, 877–79 (1981) (supplying information to police in criminal investigation of co-employee); *Frampton v. Cent. Ind. Gas Co.*, 260 Ind. 249, 297 N.E.2d 425, 428 (1973) (filing workers' compensation claim); *Adler v. Am. Standard Corp.*, 291 Md. 31, 432 A.2d 464, 471 (1981); *Gram v. Liberty Mut. Ins. Co.*, 384 Mass. 659, 429 N.E.2d 21, 28–29 (1981); *Trombetta v. Detroit, Toledo & Ironton R.R. Co.*, 81 Mich.App. 489, 265 N.W.2d 385, 388 (1978) (refusal to alter pollution control reports illegally); *Keneally v. Orgain*, 186 Mont. 1, 606 P.2d 127, 129 (1980); *Ambroz v. Cornhusker Square Ltd.*, 226 Neb. 899, 416 N.W.2d 510, 513 (1987); *Hansen v. Harrah's*, 100 Nev. 60, 675 P.2d 394, 396–97 (1984); *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 417 A.2d 505, 512 (1980) (adopting both tort and contract causes of action for wrongful discharge); *Boudar v. E.G. & G., Inc.*, 106 N.M. 279, 742 P.2d 491, 495 (1987); *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445, 447 (1989) (refusal to drive truck in excess of hours allowed by Department of Transportation and to falsify log to show compliance); *Ressler v. Humane Soc'y of Grand Forks*, 480 N.W.2d 429, 431–32 (N.D.1992) (testifying truthfully); *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512, 515 (1975) (absence due to jury duty); *Reuther v. Fowler & Williams Inc.*, 255 Pa.Super. 28, 386 A.2d 119, 120 (1978) (performing jury duty); *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 337 S.E.2d 213, 216 (1985) (honoring subpoena request to appear before grand jury investigating employer); *Johnson v. Kreiser's, Inc.*, 433 N.W.2d 225, 227 (S.D.1988); *Clanton v. Cain–Sloan Co.*, 677 S.W.2d 441, 445 (Tenn. 1984) (filing workers' compensation claim); *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex.1985); *Berube v. Fashion Ctr., Ltd.*, 771 P.2d 1033, 1042 (Utah 1989) (recognizing public policy exception to employment at will, but no action on facts of case); *Payne v. Rozendaal*, 147 Vt. 488, 520 A.2d 586, 589 (1986).

12.  The court of appeals stated that, "[t]he exception began as a narrow rule permitting employees to sue their employers when a statute expressly prohibited their discharge. The rule later expanded to include any discharge in violation of a statutory expression of public policy. The broadest formulation of the rule permits recovery even in the absence of a

granted review in *Phipps,* but before release of our decision, the legislature enacted the Whistleblower Act, and we no longer had before us the policy question of whether Minnesota should join the majority of states that recognized a common law cause of action for wrongful discharge. *Phipps,* 408 N.W.2d at 571. Because the employee in *Phipps* was injured before enactment of the Whistleblower Act, the Whistleblower Act could not be the basis for his claim, and thus, we had to determine whether he could proceed under the common law. *See* 408 N.W.2d at 571. We allowed the employee to pursue his common law cause of action for wrongful discharge, and we agreed that the common law protects those fired for their refusal to violate the law. *Id.*

■ Because of the enactment of the Whistleblower Act, we acknowledged in *Phipps* that we did not have to resolve the policy question whether Minnesota should recognize a common law cause of action for wrongful discharge. 408 N.W.2d at 571. While the causes of action before us are

statutory claims for wrongful discharge, our analysis of the right to jury trial remains the same: are these claims for retaliatory discharge seeking only money damages causes of action at law? We conclude that they are.

A wrongful discharge claim sounds in tort.[13] We recognized in *Lewis v. Equitable Life Assurance Society of the United States,* 389 N.W.2d 876, 887–88 (Minn. 1986), that a suit for wrongful discharge could sound in tort, and we referred to wrongful discharge as a tort action in *Graham v. Special School District No. 1,* 472 N.W.2d 114, 115, 120 (Minn.1991).[14] In fact, many states have characterized an action for wrongful discharge under the public policy exception to the doctrine of employment at will as a tort.[15] As noted earlier, retaliatory discharge is one type of wrongful discharge. *See Phipps,* 396 N.W.2d at 590–91 and citations therein. A whistleblower claim that arises from alleged retaliatory conduct by the employer intended to injure the employee for engag-

---

specific statutory prohibition." *Phipps,* 396 N.W.2d at 591 (citing *Wagenseller v. Scottsdale Mem'l Hosp.,* 147 Ariz. 370, 710 P.2d 1025, 1031 (1985); *Boyle v. Vista Eyewear, Inc.,* 700 S.W.2d 859, 871 (Mo.Ct.App.1985); *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834, 840 (1983)).

13. *See, e.g., Tameny v. Atl. Richfield Co.,* 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330, 1335 (1980); *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353, 356–58 (1978) (holding an employer liable in tort for retaliatory discharge of an at-will employee who filed legitimate workers' compensation claim); *Firestone Textile Co. Div., Firestone Tire and Rubber Co. v. Meadows,* 666 S.W.2d 730, 733 (Ky.1983); *see also* Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith,* 93 Harv. L.Rev. 1816, 1817 n. 7, 1822–24 (1980) "The tort of abusive or retaliatory discharge holds employers liable for dismissals in response to employee activity that is protected by public policy."

14. The court of appeals in *Phipps* also characterized a claim for wrongful discharge as a tort claim. 396 N.W.2d at 590.

15. *See supra* note 12; *see also Martin Marietta Corp. v. Lorenz,* 823 P.2d 100, 102 (Colo. 1992); *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385, 388–89 (1980); *Parnar v. Americana Hotels, Inc.,* 65 Haw. 370, 652 P.2d 625, 631 (1982); *Fitzgerald v. Salsbury Chem., Inc.,* 613 N.W.2d 275, 281 (Iowa 2000); *Coleman v. Safeway Stores, Inc.,* 242 Kan. 804, 752 P.2d 645, 650 (1988); *Cloutier v. Great Atl. & Pac. Tea Co.,* 121 N.H. 915, 436 A.2d 1140, 1146 (1981); *Collins v. Rizkana,* 73 Ohio St.3d 65, 652 N.E.2d 653, 657–58 (1995); *Burk v. K–Mart Corp.,* 770 P.2d 24, 28 (Okl.1989); *Bowman v. State Bank of Keysville,* 229 Va. 534, 331 S.E.2d 797, 801 (1985); *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081, 1089 (1984); *Griess v. Consol. Freightways Corp. of Del.,* 776 P.2d 752, 754 (Wyo.1989).

ing in lawful conduct or for reporting unlawful conduct, therefore, is a tort.

A retaliatory discharge claim is also a claim for which the law recognizes a right to consequential money damages in an action in district court. *See* Minn.Stat. §§ 181.935(a) & 182.669, subd. 1. As a tort action seeking only money damages in a district court, it is a cause of action at law.

In the case before us, the claims are tort claims, brought in the district court, seeking only consequential money damages. Thus, the nature and character of the controversy support the conclusion that a whistleblower claim seeking only money damages is an action at law.

■ We also consider the theory for relief. *Olson*, 628 N.W.2d at 149. We have held that seeking monetary relief is not enough by itself to guarantee a jury trial. *Id.* Accordingly, in *Indianhead Truck Line, Inc. v. Hvidsten Transportation, Inc.*, 268 Minn. 176, 128 N.W.2d 334 (1964), we held that in an action for specific performance of an agreement, in which the plaintiff sought monetary damages as part of the equitable relief, rather than as an award of damages for breach of contract, there was no constitutional right to jury trial. *Id.* at 192–93, 128 N.W.2d at 346. While claims for money damages are typically legal claims, *see* Minn. R. Civ. P. 38.01,[16] a party should not be permitted to cloak or disguise an equitable action simply by its prayer for relief.

However, because we look to the nature and character of the controversy as determined from all the pleadings, including the relief sought, the nature of the relief sought is important in determining whether a claim is legal or equitable, and as noted, claims for consequential money damages are typically legal claims.[17] We note again that appellants do not seek the equitable relief provided by the Whistleblower Act, Minn.Stat. § 181.935(a), and MOSHA, Minn.Stat. § 182.669, subd. 1, but seek only money damages. Examination of the relief sought further supports the conclusion that a whistleblower claim seeking only money damages is an action at law.

Our analysis is not altered by our decisions in *Breimhorst v. Beckman*, 227 Minn. 409, 35 N.W.2d 719 (1949), or *Ewert v. City of Winthrop*, 278 N.W.2d 545 (Minn. 1979). In *Breimhorst*, we recognized that the legislature abolished a common law cause of action for an employee injured on the job, replacing it with a remedy under the Workers' Compensation Act, a statutory remedy that was *new, adequate,* and *fundamentally different* from the common law cause of action. *See* 227 Minn. at 433–34, 35 N.W.2d at 734. The legislature took the cause of action out of the district court and placed it in a quasi-judicial forum. *See id.* at 432, 35 N.W.2d at 733. We concluded that when the legislature abolished a common law cause of action and substituted a remedy that was new, ade-

---

**16.** Rule 38.01 provides, in relevant part, that "[i]n actions for the recovery of money only * * * the issues of fact shall be tried to a jury." Minn. R. Civ. P. 38.01.

**17.** Much the same as Minnesota's approach of examining the nature and character of the controversy, the U.S. Supreme Court, when determining whether a claim is a legal claim with an attendant right to jury trial under the Seventh Amendment, looks at the nature of the claim and at the nature of the relief

sought, and places greater emphasis on the latter. *See, e.g., Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 565, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *Tull v. United States*, 481 U.S. 412, 417, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987); *Curtis v. Loether*, 415 U.S. 189, 195–96, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974).

quate, and fundamentally different from that which was provided at common law, there was no constitutional right to a jury. *Id.* at 434, 35 N.W.2d at 734. We did not hold in *Breimhorst* that the legislature could deny the constitutional right to jury trial when it codifies, creates, or modifies a cause of action at law.

In *Ewert,* we held that the Minnesota Constitution does not provide the right to trial by jury to one who appeals a special assessment. 278 N.W.2d at 550. We stated that the right to appeal a special assessment arises exclusively from statute and does not exist at common law, and as such, there is no attendant right to jury trial in appeals from special assessments. *Id.* We did not hold in *Ewert* that all statutory causes of action are equitable actions with no right to jury trial. *See id.* When a statutory cause of action is legal in nature, it falls within the parameters of those "cases at law" for which there is a constitutional right to jury trial.

We acknowledge our conclusion in *Whallon,* 4 Minn. at 115 (Gil. at 76), and *Westerlund,* 157 Minn. at 383, 197 N.W. at 111, that the legislature may expand the right to a jury, but it may not withdraw the constitutional right to jury trial merely by codifying a common law cause of action. To the extent that we suggested in *Breimhorst* that the legislature may limit the constitutional right to a jury by simply codifying or modifying a common law cause of action, and to the extent that we suggested in *Ewert* that a statutory cause of action may never carry a constitutional right to jury trial, we clarify today that the right to a jury trial applies to all causes of action at law, regardless of whether the legislature has codified the cause of action.

We hold that an action brought in district court under the Whistleblower Act, Minn.Stat. § 181.935(a), and MOSHA, Minn.Stat. § 182.669, subd. 1, alleging the tort of retaliatory discharge and seeking only money damages, is a cause of action at law with a constitutional right to jury trial.

### IV.

■ We now turn to the issue of whether an employee's whistleblower claim fails if he reports the violation of a law or rule that does not implicate clearly mandated public policy. The county argues that appellants' claims reflect only appellants' self-interest and do not implicate clearly mandated public policy. In our recent decision in *Anderson–Johanningmeier v. Mid–Minnesota Women's Center, Inc.,* 637 N.W.2d 270, 277 (Minn.2002), we held that the protections of Minn.Stat. § 181.932, subd. 1(a), are not limited to reports that implicate public policy. Accordingly, we hold that the provision of the Whistleblower Act that prohibits employer retaliation for an employee's report of a violation or suspected violation of federal or state law or rule adopted pursuant to law, Minn.Stat. § 181.932, subd. 1(a), does not require that an employee's report of a violation or suspected violation of law or rule adopted pursuant to law implicate public policy.

### V.

■ We are also asked whether an employee's whistleblower claim fails if the employee does not specifically identify the law or rule he alleges that the employer violated. Appellants did not identify in their pleadings a specific federal or state law or rule adopted pursuant to law that they suspected the county of violating. Appellants' complaints to their supervisors and to the Safety and Health Division, however, implicated suspected violations of MOSHA, and their pleadings consequently implicated suspected violations of state law. A whistleblower claim need not iden-

tify the specific law or rule that the employee suspects has been violated, so long as there is a federal or state law or rule adopted pursuant to law that is implicated by the employee's complaint, the employee reported the violation or suspected violation in good faith, and the employee alleges facts that, if proven, would constitute a violation of law or rule adopted pursuant to law. *See Obst v. Microtron, Inc.,* 614 N.W.2d 196, 204 (Minn.2000); Minn.Stat. § 181.932, subd. 1(a). We hold that the Whistleblower Act, Minn.Stat. § 181.932, subd. 1(a), does not require that an employee specifically identify in the pleadings the law or rule adopted pursuant to law that the employee suspects has been violated, when the employee brings a claim under Minn.Stat. § 181.935(a) for retaliatory discharge resulting from a report made in good faith that a violation or suspected violation of law or rule adopted pursuant to law has occurred, and so long as the alleged facts, if proven, would constitute a violation of the law or rule adopted pursuant to law.

## VI.

 The final issue is whether appellants are collaterally estopped from pursuing their whistleblower claims. The county argues that remand for jury trial is improper because, after trial to the court alone, the district court directed that judgment be entered for the county, dismissing appellants' complaints with prejudice. Thus, the county argues that appellants are collaterally estopped from trying their claims again to a jury. A right to a jury trial ordinarily may not be abridged by the doctrine of collateral estoppel.[18] *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 550–

51, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990) and citations therein. We hold that, when an employee has improperly been denied the right to a jury trial in the district court, the employee is not estopped from pursuing claims previously tried, over the employee's objection, to the court alone. Because we conclude that appellants were improperly denied their constitutional right to try to a jury their whistleblower and MOSHA claims, we vacate the judgment of the district court and remand for trial by jury.

Affirmed in part, reversed in part, and remanded.

---

18. *Cf. Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 335, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (concluding that equitable determination can have collateral-estoppel effect in subsequent legal action without violating Seventh Amendment); *Graham,* 472 N.W.2d at 118–19 (holding that when non-jury, statutory termination proceeding produces findings entitled to judicial recognition and finality, then constitutional right to jury trial is not violated).