Laura **STORMS**, Respondent,

v.

Connie **SCHNEIDER**, Appellant.

No. A10–1876.

Court of Appeals of Minnesota.

Aug. 8, 2011.

Lewis A. Remele, Jr., Mark R. Whitmore, Laurel J. Pugh, Bassford Remele, P.A., Minneapolis, MN, for respondent.

Erick G. Kaardal, William F. Mohrman, Mohrman & Kaardal, P.A., Minneapolis, MN, for appellant.

Considered and decided by JOHNSON, Chief Judge; SCHELLHAS, Judge; and HARTEN, Judge.*

## OPINION

JOHNSON, Chief Judge.

Each of the two parties to this lawsuit seeks ownership of a particular statue of Our Lady of the Immaculate Conception. Storms commenced a replevin action to recover the statue from Schneider. The district court denied Schneider's request for a jury trial, conducted a court trial, and decided the case in Storms's favor. On appeal, Schneider argues only that she is entitled to a jury trial. We conclude that Schneider is so entitled and, therefore, reverse and remand for a new trial.

## FACTS

We will recite the facts that are not in dispute and relevant to our resolution of this appeal. Our recitation of the facts is necessarily based on the district court's findings and the parties' briefs because a transcript of the bench trial was not prepared.

In late 2005 and early 2006, Storms and others planned a religious ceremony to be held on November 11, 2006, at the Basilica of the National Shrine of the Immaculate Conception in Washington, D.C. In October 2006, Storms sought a statue of Our Lady of the Immaculate Conception for use in the ceremony. Storms learned that Schneider had made religious statues in the past. Storms and Schneider orally agreed that Schneider would make a statue of Our Lady of the Immaculate Conception in exchange for Storms's payment of $1,800. Schneider agreed to bring the statue from her home in St. Paul to Washington, D.C., and to deliver the statue to Storms before the ceremony.

On November 10, the day before the ceremony, Storms and Schneider met in the parking lot of the Basilica. Schneider showed the statue to Storms, and Storms accepted it. Storms offered to pay Schneider at that time, but Schneider said that Storms could make payment the next day.

On November 11, before the ceremony began, Storms paid for the statue by giving Schneider a personal check. The statue was used in the ceremony. After the ceremony, however, a dispute arose between Storms and Schneider concerning the statue. Schneider attempted to return Storms's check, but Storms refused. The Basilica declined to accept the gift at that time in light of the dispute. An officer of the religious organization that sponsored the ceremony agreed to hold the statue temporarily until the dispute could be resolved. The officer later gave Schneider possession of the statue based on her statement that she needed to take it to Minnesota to repair it. Not until early 2007 did Storms learn that Schneider was in possession of the statue. Storms requested that Schneider return the statue to her, but Schneider refused.

On August 9, 2007, Storms commenced this action in the Ramsey County District Court. The first page of the complaint

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

indicates that the "case type" is "replevin." In the prayer for relief, Storms sought an "immediate order for recovery of possession ... as provided in Minnesota Statutes § 565.24" and a "final judgment after trial granting [Storms] possession of the Statue."

On the same day that she commenced the action, Storms brought a "motion for recovery of possession prior to notice and hearing pursuant to Minn.Stat. § 565.24." On August 22, 2007, the district court held a hearing and issued an order that granted Storms's motion, directed the sheriff to seize the statue from Schneider's home in St. Paul, and gave Storms the right to possess the statue "pending further hearing ... and order of this Court."

Schneider demanded a jury trial in her answer and amended answer. In December 2009, the parties submitted letter briefs, at the district court's request, on the question whether Schneider is entitled to a trial by jury. On June 7, 2010, the scheduled day of trial, the district court heard oral argument on the issue and ruled that the case should be tried to the court, not to a jury. The district court reasoned that Schneider is not entitled to a jury trial because "this is clearly a case in equity and not a case for legal replevin."

The parties tried the case to the court for two days. In August 2010, the district court issued its findings of fact and conclusions of law. The district court determined that Storms is the owner of the statue and concluded that it would be equitable to grant possession of the statue to Storms. Schneider appeals.

## ISSUE

Does Schneider have a right to a trial by jury on Storms's cause of action for replevin?

## ANALYSIS

■ Schneider argues that the district court erred by ruling that she does not have a right to a trial by jury. We apply a *de novo* standard of review to the question whether a party has a right to a jury trial in a civil case. *Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 148 (Minn.2001); *United Prairie Bank v. Haugen Nutrition & Equip., LLC*, 782 N.W.2d 263, 268 (Minn.App.2010).

### A.

■ We begin by reviewing the law of replevin, which is "the appropriate means to recover possession of personal property—of definite things," *Seebold v. Eustermann*, 216 Minn. 566, 577, 13 N.W.2d 739, 745 (1944), and a means "to determine the right of possession of personal property or the title thereto." *A & A Credit Co. v. Berquist*, 230 Minn. 303, 306, 41 N.W.2d 582, 584 (1950) (quotation omitted). Replevin proceeds in two stages, both of which are governed to a significant extent by statute.

### 1.

Chapter 565 of the Minnesota Statutes, which is entitled "Claim and Delivery," governs pretrial procedures in a replevin action. *See* Minn.Stat. §§ 565.21 to .29 (2010). Chapter 565 took its current form in 1979. *See* 1979 Minn. Laws ch. 18, §§ 1–9, at 16–21. But chapter 565 derives from an 1851 statute entitled "Claim and Delivery of Personal Property." *See* Minn.Rev.Stat. (Terr.) ch. 70, §§ 122–33 (1851). Similar statutes have continuously been in effect since 1851, although they have been renumbered, restructured, and rephrased in various ways over time. *See* Pub. Stat. ch. 60, §§ 130–41 (1858); Minn. Gen.Stat. ch. 66, §§ 112–27 (1866); Minn. Gen.Stat. ch. 66, §§ 132–44 (1878); Minn. Gen.Stat. ch. 66, §§ 5274–86 (1894); Minn.

Rev. Laws ch. 77, §§ 4204–14 (1905); Minn. Gen.Stat. ch. 77, §§ 7834–44 (1913); Minn. Gen.Stat. ch. 77, §§ 9331–41 (1923); Mason's Minn.Stat. ch. 77, §§ 9331–41 (1927); Minn.Stat. §§ 565.01–.11 (1941).

The first section of chapter 565 provides, "In an action to recover possession of personal property, the claimant may obtain possession of the property prior to final judgment in the manner prescribed in" chapter 565. Minn.Stat. § 565.21 (2010). The claimant may seek temporary possession of personal property while a replevin action is pending by way of a motion. Minn.Stat. § 565.23, subd. 1 (2010). The motion shall be accompanied by an affidavit, which must state certain facts that are essential for recovering possession of the personal property pending a final judgment. *Id.* The claimant must serve the motion papers on the respondent with a notice of hearing. *Id.,* subd. 2.

After a hearing on such a motion, the district court "shall order seizure of the property from respondent and delivery to claimant if claimant has demonstrated the probability of success on the merits entitling claimant to possession of the property" and if the claimant has complied with certain bonding requirements. *Id.,* subd. 3. If a district court grants a claimant's motion for temporary possession of personal property, the claimant must file a bond with the district court in an amount that is one-and-one-half times the fair market value of the property. Minn.Stat. § 565.25, subd. 1 (2010).

As an alternative to serving notice of hearing on a respondent, a claimant may, in certain circumstances, seek temporary possession of personal property prior to a hearing. Minn.Stat. § 565.24 (2010). In that event, the claimant's motion papers also must state "facts establishing grounds for a prehearing seizure." Minn.Stat. § 565.24, subd. 1(b). If the district court is satisfied with the claimant's grounds for prehearing seizure, the court may order seizure of the property. *Id.,* subd. 2. If the district court does not direct a seizure of the property, the court may issue an order to protect the property until a hearing can be held. *Id.,* subd. 3. An order issued pursuant to section 565.24 must be served on the respondent "in the manner prescribed for personal service of a summons," or the district court may determine "alternative methods" to provide the respondent with actual notice of the order. *Id.,* subd. 6.

### 2.

A district court's ruling on a motion for temporary possession brought pursuant to sections 565.23 or 565.24 does not resolve all issues pleaded in a replevin action or allow for entry of final judgment. Rather, a replevin action must proceed to trial on the facts and theories pleaded in the complaint. This principle is implied by the statutory provision that authorizes a motion for recovery of "possession of property after service of a summons and complaint but *prior to final judgment.*" Minn. Stat. § 565.23, subd. 1 (emphasis added). The need for a trial on the merits and a final ruling also is implied by the last section of chapter 565, which provides, "A motion for advancement on the calendar or for a date certain for *final hearing on the merits* may be presented at any time … and the court may advance the case or set a date certain as the ends of justice require." Minn.Stat. § 565.29 (2010) (emphasis added).

No other provision in chapter 565 provides any further guidance for the procedural aspects of a replevin action after the conclusion of proceedings on a motion for temporary possession. But three other statutes are relevant to the trial of a replevin claim. First, a venue statute pro-

vides, "Actions to recover the possession of personal property wrongfully taken shall be tried in the county in which the taking occurred or in the county in which the property is situated." Minn.Stat. § 542.06 (2010). Second, a statute entitled "Judgment in Replevin" provides, among other things, that a claimant may obtain a judgment for possession of personal property or, if "possession cannot be obtained," a judgment for damages. Minn.Stat. § 548.04 (2010). Third, a statute entitled "Verdict in Replevin" describes the issues in a replevin case that are to be determined by a jury's verdict:

> In an action for the recovery of specific personal property, if the property has not been delivered to the claimant and *the jury* find that the claimant is entitled to its recovery, or if the property is not in the possession of the respondent, and by answer the respondent claims a return thereof, and the verdict is in the respondent's favor, *the jury* shall assess the value of the property and the damages, if any are claimed in the complaint or answer, which the prevailing party has sustained by reason of the detention, or taking and withholding, of such property. When the verdict is in favor of the party having possession of the property its value shall not be found.

Minn.Stat. § 546.23 (2010) (emphasis added). The language of section 546.23 first appeared in 1851 and has been unchanged since then, though it has been renumbered several times. *See* Minn.Rev.Stat. (Terr.) ch. 71, § 38 (1851); Pub. Stat. ch. 61, § 38 (1858); Minn. Gen.Stat. ch. 66, § 221 (1866); Minn. Gen.Stat. ch. 66, § 239 (1878); Minn. Gen.Stat. ch. 66, § 5383 (1894); Minn. Rev. Laws ch. 77, § 4181 (1905); Minn. Gen.Stat. ch. 77, § 7811 (1913); Minn. Gen.Stat. ch. 77, § 9307 (1923); Mason's Minn.Stat. ch. 77, § 9307 (1927); Minn.Stat. § 546.23 (1941).

**B.**

We proceed by reviewing the law concerning the right to a jury trial, both generally and with respect to an action for replevin.

"The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy." Minn. Const. art. I, § 4. The right to a trial by jury is accommodated by the rules of civil procedure, which provide, "In actions for the recovery of money only, or of specific real property or personal property, the issues of fact shall be tried by a jury, unless a jury trial is waived...." Minn. R. Civ. P. 38.01. "This rule defines the scope of the right to a jury trial in Minnesota, but it does not enlarge or diminish the historical right to a jury trial guaranteed by the Minnesota Constitution." *Olson*, 628 N.W.2d at 153.

The supreme court continues to recognize "the right to a jury trial as it existed in the Territory of Minnesota when our constitution was adopted in 1857." *Abraham v. County of Hennepin*, 639 N.W.2d 342, 348 (Minn.2002). Accordingly, any party to a case may demand a jury trial if the action was originally considered an action "at law." *Olson*, 628 N.W.2d at 150. But no party may demand a jury trial if an action was, in 1857, deemed equitable in nature and, thus, not an action at law. *Id.* If an action includes both legal and equitable issues, "the legal issues are triable by a jury and the equitable issues by the court." *Id.* at 149 (quoting *Morton Brick & Tile Co. v. Sodergren*, 130 Minn. 252, 255, 153 N.W. 527, 528 (1915)).

A line of cases that begins before statehood reveals that a cause of action for replevin is an action at law that gives rise to a right to a jury trial. For example, *Coit v. Waples*, 1 Minn. 134, 1 Gil. 110 (1854), is a replevin action that was tried

to a jury, and neither party to the appeal questioned the right to a jury trial in a replevin action. *Id.* at 135, 1 Gil. at 111. Another such case is *Tancre v. Pullman,* 35 Minn. 476, 29 N.W. 171 (1886). The issue on appeal in that case was the propriety of the district court's jury instruction. *Id.* at 478, 29 N.W. at 172. Again, neither party questioned the right to a jury trial in a replevin action. *Id.* at 477, 29 N.W. at 172. In the introductory paragraph of the opinion, the supreme court described the nature of the case by stating, "This is the ordinary action of claim and delivery, presenting issues of fact, and therefore for a jury." *Id.* Similarly, in *Blied v. Barnard,* 116 Minn. 307, 133 N.W. 795 (1911), a replevin action was tried to a jury. *Id.* at 308, 133 N.W. at 795. The issue on appeal was whether the district court erred by submitting the case to a jury for a special verdict instead of a general verdict. *Id.* at 309, 133 N.W. at 796. The supreme court began its analysis by stating, "That plaintiff was entitled to a jury trial and to a general verdict is beyond doubt. It was an action at law, in replevin. . . ." *Id.*

The right to a jury trial in a replevin action was at issue on appeal in *Geo. A. Hormel Co. v. First Nat'l Bank of Le Roy,* 171 Minn. 65, 212 N.W. 738 (1927), though the appeal focused only on whether the action was properly characterized as one for replevin. The plaintiff commenced a replevin action but later dismissed that claim after the defendant alleged counterclaims. *Id.* at 67, 212 N.W. at 739. The case was tried to the court on the defendant's counterclaims, which consisted solely of equitable claims, and the plaintiff's equitable defenses to the counterclaims. *Id.* at 68, 212 N.W. at 740. On appeal, the defendant argued that it was "wrongfully deprived . . . of the right to a jury trial." *Id.* at 70, 212 N.W. at 740. The supreme court rejected the defendant's argument on the ground that the plaintiff's dismissal of the replevin claim removed the only jury issue from the case: "[T]he cause of action at law had been dismissed and no jury question remained. Both the counterclaim and the defense to it were equitable in their nature." *Id.*

In light of this caselaw, it is only natural that the legislature also recognized the right to a trial by jury in replevin actions at an early date. As stated above, the statutory language that now appears in section 546.23 has been in effect since 1851, six years before the state constitution was adopted. *See* Minn.Rev.Stat. (Terr.) ch. 71, § 38. That statute expressly contemplates that a jury might "find that the claimant is entitled to" the "recovery of specific personal property." Minn. Stat. § 546.23. The legislature is presumed to be aware of the existing caselaw when it enacts legislation. *See Goodyear Tire & Rubber Co. v. Dynamic Air, Inc.,* 702 N.W.2d 237, 244 (Minn.2005); *State v. Fleming,* 724 N.W.2d 537, 540 (Minn.App. 2006).

Thus, both the supreme court and the legislature have long recognized that a cause of action for replevin is an action at law that gives rise to a right to a jury trial.

### C.

We conclude by determining whether Storms's claim is a replevin claim. We do so by reviewing the pleadings and the relief sought to determine "whether the nature of the controversy is primarily legal or whether it is primarily equitable." *Sina v. Schifsky,* 296 Minn. 528, 529, 208 N.W.2d 302, 303 (1973); *see also Abraham,* 639 N.W.2d at 348; *United Prairie Bank,* 782 N.W.2d at 269. We essentially seek to determine "the basic thrust of the litigation." *Sina,* 296 Minn. at 529, 208 N.W.2d at 303. Neither " 'the label affixed by the

pleader'" nor the relief sought should be determinative of the controversy's nature and character. *Olson*, 628 N.W.2d at 149 (quoting *Morton Brick & Tile Co.*, 130 Minn. at 255, 153 N.W. at 528).

▇ Storms pleaded a cause of action for replevin in her complaint. This is apparent not only from the label "replevin," which appears on the first page of the complaint, but also from the factual allegations and the nature of the relief sought. Storms alleged in her complaint that "the oral contract [was] consummated" but that Schneider thereafter "took the Statue by force." In her prayer for relief, she sought both temporary possession of the statue while the case was pending and permanent possession of the statue upon a final judgment. The complaint does not plead or refer to any other cause of action. When commencing the action, Storms simultaneously sought and obtained temporary possession by way of a motion brought pursuant to chapter 565, which is entitled "Claim and Delivery," the same term used by the supreme court more than a century ago to denote a replevin action. *See Tancre*, 35 Minn. at 477, 29 N.W. at 172.

Storms continued to pursue a cause of action for replevin when she proceeded to trial. In her trial memorandum, she asserted that she brought the action "for one purpose," namely, "to be declared the rightful legal owner of a religious Statue." She concluded the memorandum by requesting an "order that ... the Statue belongs to Plaintiff." These statements indicate a prototypical case of replevin, which is a means "to determine the right of possession of personal property or the title thereto." *A & A Credit Co.*, 230 Minn. at 306, 41 N.W.2d at 584; *see also Seebold*, 216 Minn. at 577, 13 N.W.2d at 745. Thus, "the basic thrust of the litigation" was Storms's interest in establishing her lawful ownership of the statue and recovering possession of it on a permanent basis. *See Sina*, 296 Minn. at 529, 208 N.W.2d at 303.

Storms attempts to avoid this conclusion by arguing that her claim was equitable in nature because she did not seek, and the district court did not award, money damages. Storms's argument assumes that the relief she sought and the district court ordered is "equitable" in nature. That assumption may be based on another sense of the multi-faceted definition of the word "equitable." *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 321 (2d ed.1995) (stating that "equity" is "a chameleon-hued word whose senses have never before been adequately broken down"). In any event, the supreme court has cautioned, "The type of remedy sought is not determinative of that party's right to a jury trial. Rather, the key question remains whether the action pleaded in the complaint is legal in nature and character and therefore gives rise to the right to a jury trial." *Olson*, 628 N.W.2d at 154. To that point, Storms's argument is inconsistent with the caselaw described above, which indicates quite clearly that a replevin action is legal in nature and character despite the nature of the remedy that may be obtained in such an action. *See Geo. A. Hormel Co.*, 171 Minn. at 70, 212 N.W. at 740; *Blied*, 116 Minn. at 309, 133 N.W. at 796; *Tancre*, 35 Minn. at 477, 29 N.W. at 172.

Storms also attempts to avoid the legal nature and character of a replevin claim by arguing that she sought the remedy of specific performance at trial. Storms contends that she temporarily maintained a replevin action when she utilized the provisions of chapter 565 to obtain temporary possession of the statue but that she later converted the action into one for the equitable remedy of specific performance. If

Storms actually had commenced and pursued this lawsuit to enforce the parties' contract by specific performance, her argument might have some force. *See Rognrud v. Zubert,* 282 Minn. 430, 434, 165 N.W.2d 244, 247–48 (1969); *Indianhead Truck Line, Inc. v. Hvidsten Transp., Inc.,* 268 Minn. 176, 192–94, 128 N.W.2d 334, 346–47 (1964). But the district court record does not support Storms's contention that she sought specific performance. Nowhere in her trial memorandum did she state that she was seeking specific performance. Furthermore, her statement of the facts to be proved at trial is inconsistent with the remedy of specific performance. She states that she paid for the statue and "took possession of" it while Schneider said, "she's all yours," but that Schneider later "took the Statue by force." She also argued that, under article 2 of the UCC, the goods were delivered and received such that she "should be declared the owner of the Statue." It is apparent that Storms had no need to enforce the contract by specific performance because the parties had performed their contractual obligations. Instead, Storms sought a remedy for the wrongful actions allegedly taken by Schneider *after* Storms's acquisition of the statue.

Thus, we conclude that the "nature and character" of Storms's claim is that of replevin. *See Olson,* 628 N.W.2d at 154. Because Storms is asserting a replevin claim, Schneider has a right to trial by jury on that claim. *See Geo. A. Hormel Co.,* 171 Minn. at 70, 212 N.W. at 740; *Blied,* 116 Minn. at 309, 133 N.W. at 796; *Tancre,* 35 Minn. at 477, 29 N.W. at 172. Thus, the district court erred by denying Schneider's demand for a trial by jury.

### DECISION

Storms's cause of action is one for replevin, which is an action at law, giving rise to a right to a trial by jury. The district court erred by denying Schneider's demand for a trial by jury. Thus, we reverse and remand for a jury trial on Storms's replevin claim.

**Reversed and remanded.**