Jerry **JERABEK**, Respondent,

v.

**TELEPROMPTER CORPORATION, et al., Respondents,**

**City of Rochester, Relator.**

**No. 46532.**

Supreme Court of Minnesota.

June 10, 1977.

Gerald H. Swanson, City Atty., Larry Collins, Asst. City Atty., Rochester, for relator.

John T. Anderson, Comp. Atty., St. Paul, for Jerabek.

Van Eps, Gilmore & Chantry and George R. Benton, Minneapolis, for Teleprompter Corp., et al.

Heard before ROGOSHESKE, PETERSON and SCOTT, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Certiorari to review decision of Worker's Compensation Court of Appeals. The compensation judge found that the employee's work with the city of Rochester fire department and his work with Teleprompter Corporation (Teleprompter) contributed equally to his personal injury, a myocardial infarction. From these findings, Teleprompter and its insurer, Lumbermens Mutual Casualty Company, and the city of Rochester appealed to the Worker's Compensation Court of Appeals. The compensation court reversed, holding the city of Rochester solely liable and ordering the city to pay temporary total and temporary partial disability benefits as well as future medical expenses. The city of Rochester argues that the evidence does not support the compensation court's holding, that the compensation court made improper use of the statutory presumption embodied in Minn.St. 176.011, subd. 15,[1] and that once the city of Rochester rehired the employee for full-time work, it should not be liable for temporary partial disability payments under Minn.St. 176.101, subd. 2, based upon the loss of earnings from a second, part-time job for which the employee had not been rehired. We remand for amended findings of fact.

The employee, Jerry Jerabek, had been employed by the city of Rochester fire department for almost 25 years at the time of the hearing before the compensation judge.

1. Minn.St. 176.011, subd. 15, provides in pertinent part: " * * * If immediately preceding the date of his disablement or death, an employee was employed on active duty with an organized fire or police department of any municipality, * * * and his disease is that of myocarditis, * * * and at the time of his employment such employee was given a thorough physical examination by a licensed doctor of medicine, and a written report thereof has been made and filed with such organized fire or police department, * * * which examination and report negatived any evidence of myocarditis, * * * the disease is presumptively an occupational disease and shall be presumed to have been due to the nature of his employment."

At the time of his injury, he was captain of a ladder company. As captain, the employee both supervised his company in its duties of ventilating buildings and participated in these duties. The employee would work a 24-hour shift followed by 24 hours off duty. After 3 days working and 3 days off on this schedule, he would have 4 days free. Since 1960, the employee had worked part time during his time off for Teleprompter as an installer of cable television outlets in homes.

On December 4, 1973, at 8 a. m., the employee began a 24-hour shift with the fire department. During the day, the employee and his company responded to three fire alarms. That evening after dinner and while watching television at the station, the employee experienced a sharp pain across the chest from nipple to nipple, which lasted approximately 30 seconds. He experienced no further chest pains that evening.

The employee left the station the next morning and picked up several work assignments from Teleprompter. The second assignment of the morning involved connecting a television set to a cable outlet. While leaning over the television set with his arms extended forward, employee experienced a chest pain and nausea. After a rest, he attempted again to perform the task but this time experienced a chest pain from nipple to nipple which lasted several hours.

The employee was hospitalized for 2 weeks. He returned to work with the fire department as a training officer at full previous pay on March 20, 1974. On August 29, 1974, employee was terminated as a training officer pursuant to a civil service commission ruling that no such position existed, and was placed on sick leave. On December 1, 1974, employee returned to work as a firefighter at captain's pay. He had not resumed work at this time for Teleprompter, who refused to employ him pending resolution of the workers' compensation controversy.

At the hearing, two doctors gave medical testimony. They agreed that the employee had suffered one myocardial infarction occurring on December 5, 1973. Otherwise, their testimony was in substantial conflict. Dr. Stephen Hodgson testified that "there is a probable causal relationship between Mr. Jerabek's heart condition and his employment as a fire fighter." With respect to the Teleprompter work, Dr. Hodgson testified that the activities of December 5 may have precipitated, as distinguished from caused or contributed to, the myocardial infarction. Dr. Thomas Arnold, in contrast, testified that he did not think there was a causal relationship between the infarction and the work.

The compensation judge found that the employee was temporarily totally disabled for 14⅘ weeks when he was not employed by either the city of Rochester or by Teleprompter. He also found that the employee was temporarily partially disabled during the 23⅖ weeks he was employed by the city but not by Teleprompter. The judge found that the employee's personal injury "arose out of and in the course of both employments equally." He determined that the employee was entitled to temporary total disability benefits of $100 weekly under Minn.St.1974, § 176.101, subd. 1. Consequently, he held each employer liable for a percentage of the benefits equal to the percentage which each had contributed to the employee's total weekly pre-injury earnings. Further, he held Teleprompter liable for temporary partial disability benefits under Minn.St. 176.101, subd. 2. This award amounted to ⅔ of the employee's pre-injury average weekly earnings from Teleprompter for each of the 23⅖ weeks of the disability.

On appeal, the Worker's Compensation Court of Appeals found that the employee performed "arduous duties" on December 4, 1973, which led to two myocardial infarctions, one on December 4, 1973, one on December 5, 1973. Accordingly, it assessed against the city of Rochester all temporary total and partial disability payments computed by the compensation judge.

The city of Rochester argues that the evidence and the law do not support the findings of the compensation court with respect to causation. It contends that the

medical testimony supports either one of two findings and no other: That both employments contributed to the personal injury or that neither did.

Without intimating whether there is evidence to support the compensation court's conclusion that the personal injury was caused by the employment with the fire department, we agree with the city of Rochester that there is no evidence to support the compensation court's findings of two myocardial infarctions and that the compensation court may have made improper use of the statutory presumption embodied in Minn.St. 176.011, subd. 15. In its memorandum, the compensation court described the evidence necessary to raise the presumption: The employee was on duty with an organized fire department, his "difficulties were coronary in nature," he had been given the necessary physical, and a written report had been filed. The compensation court concluded, "Thus employee's condition must be considered work related."

 We have frequently characterized this statutory presumption as a *rule* of evidence. It is not evidence. It is, rather, "a rule of law dictating decision on unopposed facts." *Ogren v. City of Duluth*, 219 Minn. 555, 564, 18 N.W.2d 535, 540 (1945); *Jensen v. City of Duluth*, 269 Minn. 241, 245, 130 N.W.2d 515, 518 (1964). Because substantial evidence to rebut the presumption was introduced in this case, the presumption should properly have disappeared.

We remand this case to the compensation court for an amended finding of fact that there occurred one myocardial infarction and for a reconsideration of its conclusion with respect to causation in light of this amended finding and in light of what we have said about the proper use of the statutory presumption. The compensation court may want to adduce additional medical testimony to clarify the testimony on record which, in the words of counsel for Teleprompter, "leaves something to be desired."

The city of Rochester also argues that after it rehired the employee full time, an award of temporary partial disability benefits under Minn.St. 176.101, subd. 2, for loss of income from a second, part-time job was improper.

 Minn.St. 176.101, subd. 2, which defines the compensation schedule for temporary partial disability payments, provides in part:

"In all cases of temporary partial disability the compensation shall be 66⅔ percent of the difference between the daily wage of the worker at the time of injury and the wage he is able to earn in his partially disabled condition."

Minn.St. 176.011, subd. 3, defines "daily wage" to mean:

" * * * If, at the time of injury, the employee was regularly employed by two or more employers, the employee's earnings in all such employments shall be included in the computation of daily wage."

The calculation of temporary partial disability payments is thus based upon total pre-injury earnings, however many jobs the employee held. We hold that where an injury caused by one employment results in a loss of earning capacity because the employee can no longer hold a second, part-time job, the employee is entitled to disability benefits from the employer in whose employ the injury occurred, even when that employer has reinstated the employee to full-time work. In this case, however, no award was proper because no loss of earning capacity was found.

We have frequently stated that loss of earning capacity is not synonymous with loss of actual earnings. See, e. g., *Dorn v. A. J. Chromy Const. Co.*, Minn., 245 N.W.2d 451 (1976); *Enrico v. Oliver Iron Mining Co.*, 199 Minn. 190, 271 N.W. 456 (1937). In the instant case, only the loss of a particular part-time job was shown. There is no testimony that the employee sought another part-time job nor that he was physically unable to work; indeed he had returned to work for the fire department with a doctor's approval. There is no evidence that the market was such that one with the employee's disability, skills, age, and education could not find a part-time job.

We remand for a finding of earning capacity and an appropriate amendment of the compensation court's order if necessary.

Reversed and remanded.