James A. HEINE, Respondent,

v.

Valerie SIMON, Appellant.

No. A03–710.

Supreme Court of Minnesota.

Aug. 18, 2005.

Emilio R. Giuliani, Vincent I. Breza, La-Bore, Giuliani, Cosgriff & Viltoft, Ltd., Hopkins, MN, for Appellant.

DeAnna M. McCashin, Schoep & McCashin, Chtd., Alexandria, MN, for Respondent.

William M. Hart, Damon L. Highly, Meagher & Geer, PLLP, Minneapolis, MN, for Amicus Curiae MN Defense Lawyers Ass'n.

## OPINION

ANDERSON, PAUL H., Justice.

Respondent James A. Heine was involved in two separate automobile accidents while on service calls for his employer. The accidents occurred approximately

four and one-half months apart. The first accident was with an uninsured motorist and the second accident was with appellant Valerie Simon. As a result of the accidents, Heine sustained injuries to his right shoulder, right hip, neck, and lower back. He jointly sued State Farm Insurance Company, under his employer's uninsured motorist coverage, and Simon. The district court granted Simon's motion to sever the trials, but denied her request for partial summary judgment based on collateral estoppel. The court found that Heine's previous workers' compensation determination did not collaterally estop him from litigating in this action his wage loss from the second accident. A jury found that Simon was primarily at fault for the second accident and awarded Heine $16,900.

Heine moved for a new trial on damages or, alternatively, for additur. Along with motions for costs and remittitur, Simon moved to reduce Heine's award for past medical expenses by the amounts he had already received from his workers' compensation benefits. The district court granted in part and denied in part Simon's collateral source offset motion and denied all other motions. Heine appealed on the ground that the court improperly refused to give CIVJIG 91.40 as a jury instruction. Simon appealed on the issues of collateral source offsets and collateral estoppel. The Minnesota Court of Appeals affirmed the district court decision in its entirety. *Heine v. Simon,* 674 N.W.2d 411, 419, 423 (Minn.App.2004). We affirm in part, reverse in part, and remand.

On September 26, 1993, an uninsured motorist hit respondent James A. Heine's vehicle from behind while Heine waited at a stoplight ("first accident"). At the time, Heine was on a service call for his employer, Apple Automatic Food Service. Because he was working within the scope of his employment, Heine's injuries were covered under a workers' compensation policy that Apple carried with State Farm Insurance Company. As a result of the accident, Heine suffered injuries to his right shoulder, right hip, neck, and lower back. He received physical therapy for his injuries and missed several weeks of work. He eventually returned to work to modified duties and, initially, for less than full time.

On February 8, 1994, Heine was involved in a second accident ("second accident") while on a work assignment for Apple. He swerved to avoid risking a head-on collision with appellant Valerie Simon, whose vehicle had spun out of control ahead of him. When Heine swerved, he skidded off the road and hit a pole. When the second accident occurred, Heine was still receiving physical therapy as a result of the first accident, but he was working full time at his previous wage. After the second accident, Heine was treated for injuries in his neck, lower back, hips, and shoulder,[1] and he suffered from headaches. Heine gradually returned to full-time permanent work with Apple with some lifting and work restrictions.

Heine never had a work-related injury before the first accident nor did he have any shoulder, neck, hip, or low back problems. His work had required him to regularly lift more than 20 pounds. Since the accidents, no doctor has released Heine to return to the full range of his previous duties. He has been restricted from overhead lifting and from lifting weights greater than 20 pounds and instructed to limit repetitive rotation of the neck and lower

---

1. The parties disagreed as to whether the second accident caused injury to Heine's right shoulder. This was important because Heine was claiming costs for surgery that was performed on his right shoulder in January 2002.

back. Through workers' compensation benefits, State Farm paid Heine $23,214.43 for his medical expenses through October 7, 2002.

After the second accident, Apple continued to assign Heine different duties because of his restricted mobility. In August 1994, Heine asked Apple if he could become a partner in the business, but Apple rejected the request and Heine resigned. Heine then started a business with some friends maintaining vending machines. Heine has also worked for several other employers following his resignation from Apple. Since September 18, 1994, Heine has never earned as much as his previous wages of $255.50 per week and has never held full-time employment.

On February 7, 2000, Heine filed a workers' compensation claim seeking temporary partial disability benefits and permanent partial disability benefits because of his injuries from the two accidents. He claimed that the accidents restricted him to part-time work. At hearings held on November 30 and December 4, 2000, a vocational expert testified that she believed Heine was voluntarily underemployed between September 18, 1994, and the date of the workers' compensation hearing. The workers' compensation judge found that Heine's resignation from Apple in September 1994 was for personal reasons and not related to work injuries. The judge also found that Heine had not met his burden of proof on his claim that his doctor had restricted him to working only half-time between September 1994 and August 2000.

The compensation judge found that Heine's permanent partial disability was

seven percent and that he was entitled to a maximum of 225 weeks of temporary partial disability benefits for his injuries related to both accidents collectively. The judge also determined that Heine's wages at the time of both accidents averaged $255.50 gross per week.[2] On January 31, 2001, the judge's order included the following: (1) Heine was entitled to payment for a seven percent permanent partial disability; (2) no interest was due on the payment; and (3) Heine's claim for temporary partial disability wage loss benefits from September 18, 1994 to December 4, 2000 was denied.

Heine appealed from the compensation judge's determination of the amount of his weekly wages and the judge's denial of temporary partial disability benefits between September 18, 1994 and December 4, 2000. The Workers' Compensation Court of Appeals (WCCA) affirmed, and we affirmed the WCCA without an opinion.

On September 3, 1999, five months before filing his workers' compensation claim, Heine commenced a negligence action against Simon and State Farm, Apple's uninsured motorist insurer. Heine sued the parties jointly because he claimed that he could not apportion the damages caused by each defendant. He asserted that the uninsured motorist and Simon both had been driving carelessly and negligently when the respective accidents occurred. Heine alleged that, as a result of the accidents, he "sustained injuries to his cervical and lumbar spine and was otherwise severely and permanently injured satisfying the thresholds set forth in Minn. Stat. § 65B.51, Subd. 3."[3] He requested a

---

**2.** Heine had also claimed that he had received an additional $100 per week in cash in 1993 and 1994 from his employer, but the workers' compensation judge found that this claim was

"not substantiated by any contemporaneous documentation."

**3.** Minnesota Statutes § 65B.51, subd. 3 (2004), limits the circumstances under which

judgment of greater than $50,000 from each defendant for past and future medical expenses and loss of earnings and earning capacity.

On Simon's motion and against Heine's opposition, the district court severed the trials on the two causes of action stating that "the two accidents [were] not part of the same series of occurrences and are not factually connected to each other." Because the two accidents occurred nearly five months apart and involved different defendants and circumstances, the court found that keeping the two matters together would be "an unreasonable extension of the joinder rule."

After the two causes of action were severed, Simon moved for partial summary judgment arguing that Heine was collaterally estopped from relitigating the issue of accident-related wage loss. She asserted that the issue of whether the second accident had caused Heine any wage loss was already settled in the workers' compensation proceedings. The district court denied Simon's motion, finding that Simon failed to establish that (1) the workers' compensation issue was identical; (2) Heine had a full and fair hearing on the issue of wage loss; and (3) privity existed between Simon and the parties in the workers' compensation claim.

At trial, in the action against Simon, Heine stated that he did not know which accident caused which injuries, but he stated that his pain from the first accident had decreased significantly just before the second accident. The doctors who examined or treated Heine had widely varying opinions as to the causation and seriousness of Heine's injuries. Dr. Joseph Engel, a specialist in physical medicine who had treat-

ed Heine many times, testified that he believed that the first accident caused Heine's injuries, but that the second accident was responsible for 75 percent of Heine's continuing lower back injuries and 40 percent of his continuing neck injuries. Dr. Engel also testified that the second accident had aggravated Heine's injuries from the first accident. Dr. Steven Trobiani, a neurologist to whom Dr. Engel referred Heine for further evaluation, believed that the second accident caused permanent injuries to Heine's spine and right shoulder and was responsible for all of Heine's post-February 1994 medical bills. Dr. Thomas McPartlin, a neurologist who performed an independent medical examination on Heine in 2001, testified that the second accident caused only minor temporary injuries. Dr. Barbara Seizert, another specialist in physical medicine who treated Heine beginning in 2000, did not render an opinion as to which injuries were caused by the second accident. After all of the testimony was completed, Heine requested $27,167.44 for past medical expenses; $70,000 to $140,000 for future medical expenses; $78,600 for past lost wages; and $260,000 for future lost wages.

Because he contended that the second accident aggravated his injuries and because he could not determine the damage apportionment between the two accidents, Heine requested 4A Minn. Dist. Judges Ass'n, *Minnesota Practice, Jury Instruction Guides—Civil*, CIVJIG 91.40 (4th ed.1999). Alternatively, he says that he requested a special interrogatory on the special verdict form requesting the jury to apportion between the injuries from the first and second accidents. The district court denied both of these motions and

a person can recover damages for noneconomic detriment. It requires that the person have accrued medical expenses in excess of $4,000 or that the person have suffered an injury that resulted in permanent injury, permanent disfigurement, death, or disability for 60 days or more.

specifically stated that it rejected CIVJIG 91.40 because it "misstates the current State of Minnesota law." In place of CIVJIG 91.40, the court gave 4 Minn. Dist. Judges Ass'n, *Minnesota Practice, Jury Instruction Guides—Civil,* CIVJIG 163 (3d ed.1986).

The jury returned a verdict for Heine on September 29, 2002, finding that Simon was 80 percent directly at fault for the accident. The jury awarded Heine $2,100 for past pain, disability, and emotional distress; $6,800 for past wage loss; $8,000 for past health care expenses; and nothing for future damages. On December 16, 2002, the district court entered judgment for Heine in the amount of $16,900.[4]

Heine moved for a new trial on damages, or alternatively, for additur, which the district court denied. With her motions for costs and remittitur, Simon made a motion for collateral source offset under Minn.Stat. § 548.36, which the court granted in part and denied in part. The court determined that State Farm had already paid $23,214.43 of Heine's $27,167.44 claim for past medical expenses. Accordingly, to avoid overcompensating Heine for past medical expenses, the court reduced Heine's $8,000 past health care expense award by $4,046.99. The $3,953.01 that remained payable on Heine's award was the exact difference between Heine's claimed expenses of $27,167.44 and the amount that State Farm had already paid to Heine—$23,214.43. The court then amended its Order for Judgment, reducing Heine's total award to $12,853.01. The court denied Simon's other motions.

Both parties appealed. Heine appealed from the denial of his motion for a new

trial claiming that the district court erred in refusing to instruct the jury in accordance with CIVJIG 91.40. Simon challenged the court's finding that Heine was not collaterally estopped from recovering lost wages against Simon. Simon also challenged the court's application of collateral source offset under Minn.Stat. § 548.36. The court of appeals affirmed the district court. *Heine,* 674 N.W.2d at 419, 423.

Simon appeals on two grounds, claiming that: (1) the district court erred when it applied Minn.Stat. § 548.36, allowing for only a partial offset of the jury award; and (2) Heine is collaterally estopped from seeking lost wages because the workers' compensation court already decided this claim. Heine appeals and requests a new trial on the issue of damages with the jury receiving CIVJIG 91.40 in its entirety.

### I.

First, we address the question whether Heine, in his action against Simon, is collaterally estopped from litigating the issue of lost wages. Simon argues that Heine cannot litigate this issue because Heine had a full and fair opportunity to be heard on the identical wage loss issue at his workers' compensation hearing. Simon bases her argument on the workers' compensation judge's determination that Heine did not meet his burden of proving that he was limited to working part time between September 18, 1994, the date that he left his job with Apple, and the dates of the workers' compensation hearing. Heine denies that the wage loss issues from the two proceedings are identi-

---

4. The jury award of $16,900 should have been reduced by 20 percent, the amount that the jury determined that Heine was at fault. A proposed court order, dated October 30, 2002, and signed by Judge McGunnigle, re-

flects this reduction and leaves a damage amount of $13,520. The order for judgment, dated December 16, 2002, and signed by Judge McGunnigle, however, does not reflect the reduction for Heine's portion of fault.

cal because of the limits built into the workers' compensation statute.

■ The doctrine of collateral estoppel is employed to prevent litigants from relitigating in subsequent actions identical issues that were determined in a prior action. *Nelson v. Am. Family Ins. Group,* 651 N.W.2d 499, 511 (Minn.2002). But we "do not apply collateral estoppel rigidly and focus instead on whether an injustice would be worked upon the party upon whom the estoppel is urged." *Id.* Whether collateral estoppel is available presents a mixed question of law and fact that we review de novo. *Care Inst., Inc.-Roseville v. County of Ramsey,* 612 N.W.2d 443, 446 (Minn.2000).

■ When an agency acts in a judicial or quasi-judicial capacity, we have said that collateral estoppel might apply in subsequent proceedings. *Graham v. Special Sch. Dist. No. 1,* 472 N.W.2d 114, 115–16 (Minn.1991). We have also indicated that a workers' compensation hearing is quasi-judicial. *See Abraham v. County of Hennepin,* 639 N.W.2d 342, 353 (Minn.2002). But we have noted that "[a] right to a jury trial ordinarily may not be abridged by the doctrine of collateral estoppel." *Id.* at 355 (holding that an employee was not estopped from pursuing issues previously litigated when he had been improperly denied a jury trial in his previous action). Moreover, with workers' compensation determinations, the employee retains his or her common law right to recover in tort from a negligent third party. *Kline v. Berg Drywall, Inc.,* 685 N.W.2d 12, 17 (Minn.2004). Further, we have never used an administrative determination to apply collateral estoppel to a subsequent action that involved outside parties.

■ We have provided a four-prong test to determine whether a party is to be collaterally estopped from raising an issue in a subsequent case. *Haavisto v. Perpich,* 520 N.W.2d 727, 731 (Minn.1994). All four prongs of the test must be met and they are as follows:

> (1) the issues in the prior and present adjudication must be identical; (2) there must have been a final adjudication on the merits; (3) the estopped party must have been a party or in privity with a party to the prior adjudication; (4) and the estopped party must have been given a fair and full opportunity to be heard on the adjudicated issue.

*Id.*

■ Our focus in this case is on the first element—whether the issue litigated in Heine's tort action against Simon is identical to the issue litigated in his prior workers' compensation adjudication. We begin by noting that the purpose of a workers' compensation determination is different from a negligence action. The purpose of workers' compensation is to provide a measure of security to workers injured on the job. *Kline,* 685 N.W.2d at 21 (quotation omitted). The purpose of a negligence action, however, is to allow a plaintiff the right to seek a remedy for any damages caused by the defendant. Liability is not an issue in a workers' compensation hearing as it is in negligence actions. *Katzenmaier v. Doeren,* 150 Minn. 521, 522–23, 185 N.W. 938, 938 (1921). The liability of the employer to pay compensation benefits does not depend on whether the employee has a cause of action against a third party. *Allstate Ins. Co. v. Eagle-Picher Indus., Inc.,* 410 N.W.2d 324, 328 (Minn.1987).

The specific wage loss issues decided as a result of Heine's workers' compensation proceedings were: (1) What was Heine's average weekly wage on his two dates of injury? (2) What time spans between September 18, 1994, when Heine left his employment with Apple, and the dates of the

workers' compensation hearing was Heine restricted to part-time work by his doctors? (3) Can Heine claim 225 weeks of temporary partial disability for each injury? (4) Were Heine's actual earnings after September 18, 1994 a measure of his earning capacity? (5) Did Heine withdraw from the labor market to become self-employed in 1994? and (6) Did Heine make a diligent search for work from September 18, 1994 through the dates of the hearing?[5] The issue to be determined in Heine's subsequent tort action against Simon was defined in distinctly different terms. The jury was instructed, "[p]ast damages for loss of earnings may include earnings, salary and value of working time lost as a result of the injury, from the time of injury to date." In the verdict form, the jury needed to determine "[w]hat amount of money will fairly and adequately compensate [Heine] for damages directly caused by the accident, up to the time of this verdict, for * * * past wage loss?"

An employee seeking to recover temporary partial disability payments in a workers' compensation claim must show that (1) he is employed, (2) he is earning less than his weekly wage at the time of the injury, and (3) the reduced wage he is able to earn in his partially disabled condition is due to the injury. Minn.Stat. § 176.101, subd. 2(b) (2004).[6] But the plaintiff in a negligence action does not

have to prove these particular requirements in order to be able to recover lost wages. Impairment of earning capacity in negligence is an item of general damages that does not require specific proof of actual earnings or income either before or after the injury. *Wilson v. Sorge*, 256 Minn. 125, 130–32, 97 N.W.2d 477, 482–83 (1959).

Based on the foregoing distinctions, the requirements for determining compensation loss in Heine's workers' compensation proceedings are different from those used to determine wage loss in this tort action. Heine's workers' compensation wage loss issues only indirectly address whether Simon's negligence from the second accident caused him any lost wages. Moreover, given the exclusivity of the Workers' Compensation Act as a remedy against the employer, invocation of collateral estoppel in an employee's third-party action in a case such as Heine's where the third party had, and could have had, no involvement in the workers' compensation proceedings does not necessarily serve the purposes of collateral estoppel. Here, these purposes, to conserve judicial resources, protect parties from multiple lawsuits, and improve court efficiency, are not served by invoking collateral estoppel. *See Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 553, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990).[7]

---

**5.** Heine's former employer admitted that Heine was restricted to working less than full-time between August 3, 2000, and the workers' compensation hearing.

**6.** The aim of temporary partial benefits is to compensate for reduction in earning capacity. *Jasnoch v. Schwab Co.*, 495 N.W.2d 204, 205 (Minn.1993). Post-injury earning capacity is a relatively theoretical concept for workers' compensation purposes, although post-injury wages create a presumption of post-injury earning capacity. *Jellum v. McGough Constr. Co.*, 479 N.W.2d 718, 719 (Minn.1992). Nev-

ertheless, loss of earning capacity is not synonymous with loss of actual earnings. *Jerabek v. Teleprompter Corp.*, 255 N.W.2d 377, 380 (Minn.1977).

**7.** We also note that Simon is attempting to apply collateral estoppel selectively based on the results of the workers' compensation hearing. Were we to apply collateral estoppel as Simon suggests, we would also have to determine that the issue of Heine's permanent disability also could not be relitigated. While the jury did not find that Heine had suffered from a permanent injury, the workers' com-

Because the wage loss issues raised in Heine's workers' compensation proceedings and this action are not identical, we conclude that Heine is not collaterally estopped from litigating lost wages in his action against Simon. Accordingly, we hold that the district court did not err in concluding that Heine's workers' compensation determination did not collaterally estop his wage loss claim. Having determined that the issues in the workers' compensation proceedings and the negligence action were not identical, we do not need to consider the three remaining prongs of our four-prong collateral estoppel test.

## II.

 Next, we address whether the district court abused its discretion when it gave CIVJIG 163 from the Third Edition of the Civil Jury Instructions Guides rather than CIVJIG 91.40 from the Fourth Edition for the jury to use in apportioning Heine's injuries. We review the district court's decision on jury instructions under an abuse of discretion standard. *Hilligoss v. Cargill,* 649 N.W.2d 142, 147 (Minn. 2002). District courts have considerable discretion in selecting the language and the propriety of a specific jury instruction. *Morlock v. St. Paul Guardian Ins. Co.,* 650 N.W.2d 154, 159 (Minn.2002). The district court errs if it gives a jury instruction that materially misstates the law. *State v. Kuhnau,* 622 N.W.2d 552, 556 (Minn.2001).

 Our holding on this issue is controlled by our companion opinion in *Rowe v. Munye,* 702 N.W.2d 729 (Minn. Aug. 18, 2005). In *Rowe,* we set forth more fully our holding that CIVJIG 91.40, as it is currently written, misstates Minnesota law when it is given to the jury in cases involving one defendant and aggravation of a preexisting injury. In *Rowe,* we concluded that CIVJIG 91.40 is an erroneous jury instruction in aggravation cases because it improperly shifts to the defendant the burden of apportioning the plaintiff's injuries between the injuries caused by the defendant and the plaintiff's preexisting injuries. In *Rowe,* we addressed the rationale of *Mathews v. Mills,* 288 Minn. 16, 178 N.W.2d 841 (1970), and *Canada by Landy v. McCarthy,* 567 N.W.2d 496 (Minn.1997), which led to placing the burden on the defendant to prove apportionment of damages in cases involving a single injury and jointly and severally liable tortfeasors. But we declined to extend this rationale to injury aggravation cases involving one defendant. We also reaffirmed that CIVJIG 163 properly states Minnesota law on aggravation.

Because Heine was injured in two accidents occurring close in time by two tortfeasors, he argues that his suit falls within the single indivisible injury rule and that *Mathews* controls the result in this case. Heine sued the defendants jointly, arguing that he could not apportion damages because the accidents occurred so close together. In severing Heine's lawsuits, the district court determined that State Farm and Simon were not joint tortfeasors. The court found the accidents to be too unrelated to be tried in the same suit because the accidents occurred "approximately five months" apart and involved completely different circumstances. We agree with the district court. We conclude that Heine's action against Simon does not involve jointly and severally liable tortfeasors and a single indivisible injury, but instead involves a single defendant and aggravation

pensation judge found that Heine's permanent partial disability was seven percent. Collateral estoppel was never intended to be applied in such a way that Heine's workers' compensation hearing would virtually nullify Heine's jury trial in his tort lawsuit.

of preexisting injuries from the first accident.

■ Accordingly, based on our holding in *Rowe* that CIVJIG 91.40 misstates Minnesota law when applied to aggravation cases and our conclusion that CIVJIG 163 is an accurate statement of Minnesota law, we hold that the district court did not abuse its discretion when it gave CIVJIG 163 rather than CIVJIG 91.40 to the jury for determining the apportionment of damages caused by Simon.

## III.

■ Finally, we determine whether the district court erred in applying Minn. Stat. § 548.36, the collateral source offset statute, to reduce Heine's medical benefits award. We review questions of statutory application under a de novo standard. *S. Minnesota Mun. Power Agency v. Boyne*, 578 N.W.2d 362, 364 (Minn.1998). We are not bound by the district court's interpretation of a statute. *Boutin v. LaFleur*, 591 N.W.2d 711, 714 (Minn.1999). Our goal in statutory interpretation is to give effect to the intention of the legislature that drafted the statute. *Educ. Minnesota–Chisholm v. Ind. Sch. Dist. No. 695*, 662 N.W.2d 139, 143 (Minn.2003).

■ When interpreting a statute, we first look to see whether the statute's language is clear or ambiguous on its face. *American Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). A statute is ambiguous when its language is subject to more than one reasonable interpretation. *Id.* Ambiguity can arise from the statute's application to the facts of the particular case. *See* Minn.Stat. § 645.16 (2004). But "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.*

■ Minnesota Statutes § 548.36 allows a party who has been found liable for tort damages for injury or disability to file a motion requesting the court to reduce the amount of the plaintiff's award by the amount the plaintiff has already received from "collateral sources." Minn.Stat. § 548.36, subd. 2–3. Collateral sources include payments made to the plaintiff up to the date of the verdict pursuant to "a federal, state, or local * * * Workers' Compensation Act." *Id.*, subd. 1. Essentially, the statute limits the amount a plaintiff can recover from a tortfeasor. *W. Nat. Mut. Ins. Co. v. Casper*, 549 N.W.2d 914, 917 (Minn.1996). We have noted that the purpose of section 548.36 is to prevent duplicate recovery. *Imlay v. City of Lake Crystal*, 453 N.W.2d 326, 335 (Minn.1990). But we have also said that applying the statute when the injured party has been "undercompensated is not justified." *Id.*

Section 548.36 requires the parties to submit written evidence and the court shall determine the amounts of the collateral sources paid or otherwise available to the plaintiff, and the amounts the plaintiff paid to secure the right to the collateral source benefit. Minn.Stat. § 548.36, subd. 2. Then, "[t]he court shall reduce the award by the amounts determined under subdivision 2, clause (1), and offset any reduction in the award by the amounts determined under subdivision 2, clause (2)." *Id.*, subd. 3(a).[8],[9] If the court is un-

---

**8.** Subrogation claims are not included in the collateral source calculation. Minn.Stat. § 548.36, subd. 2. State Farm, the workers' compensation insurer, waived any subroga-tion claims and subrogation is not at issue here.

**9.** Heine does not claim that he paid any amounts under subdivision 2, clause (2), to

able to determine the collateral sources from the written evidence that parties submitted, "the court may within ten days request additional written evidence or schedule a conference with the parties to obtain further evidence." *Id.*, subd. 3(b). The statute is silent on which party has the burden of proof.

The parties dispute the application of Minn.Stat. § 548.36 collateral source calculations to Heine's jury award of $8,000 for past medical expenses. Heine asserts that the district court properly applied section 548.36 by offsetting only the amount that would have resulted in overcompensation to him. He claims that Simon is not entitled to a full offset of the $8,000 awarded for past medical expenses because his medical claim of $27,167.44 includes medical expenses that were not paid through workers' compensation. Heine asserts that Simon did not meet her burden of proof in showing that all of the medical bills that Heine submitted to the jury had been paid by another source.

Simon responds by arguing that the district court improperly applied Minn.Stat. § 548.36 when it offset the jury award. She asserts that the court erred when it used $27,167.44 as the starting point because (1) section 548.36 requires the court to use the jury award as the starting point; and (2) the $27,164.44 only reflects Heine's claimed medical expenses, which the jury rejected when it awarded him $8,000. The Minnesota Defense Lawyers' Association, as amicus, also supports reversal of the court's collateral-source offset calculation supporting Simon's contention that, had the statute been properly applied, Heine's jury award should have been reduced to $0.

The parties also disagree about the amount of the collateral sources. Heine secure his right to the collateral source bene-

claims that the workers' compensation payment of $23,214.43 relates to both accidents and that his claim for $27,167.44 represents both the medical bills paid through workers' compensation and medical bills that he incurred since the workers' compensation hearing. Thus, he asserts that the medical bills presented to the jury and the medical bills from the workers' compensation claim are not identical. Heine argues that Simon has the burden to prove that the medical bills are the same and that she did not carry this burden.

 Simon argues that all of the $23,214.43 was paid toward the second accident and that section 548.36 requires that all of the $8,000 should be offset by the $23,214.43. She contends that her argument is supported by an affidavit from State Farm Claim Representative Shirley Gustafson indicating that the $23,214.43 was based entirely on the second accident. Heine, however, requested Gustafson to amend her affidavit to indicate that the amount paid was for both accidents. Gustafson responded to this request by stating that she does "not believe that there has been a judicial apportionment between these two injuries" and that State Farm assigned the $23,214.43 to the second accident because *Joyce v. Lewis Bolt & Nut Co.*, 412 N.W.2d 304, 307 (Minn.1987), requires that "[t]he most recent occurrence of a compensable personal injury is the controlling event." When this qualification is considered, it becomes evident that the Gustafson affidavit does not control any determination of the apportionment of the $23,214.43 between the two accidents.

 We note that while the parties do not explicitly argue that section 548.36 is ambiguous, Heine's argument nevertheless requires us to interpret section 548.36 fit.

in light of the legislative purpose of avoiding overcompensation to the plaintiff. Although legislative history may be useful in interpreting an ambiguous statute, we generally do not consider it when faced with a clearly worded provision. *State v. McKown,* 475 N.W.2d 63, 66–67 (Minn. 1991). We conclude that section 548.36 is not ambiguous because the language plainly requires the district court to reduce the "award" by the amount of the "collateral sources." Here, the jury, in total, awarded Heine $8,000 for his past medical expenses for the second accident. We agree with Simon that the $8,000 award is the proper starting point under the statute. The $27,167.44 that Heine claimed as his medical expenses is not the proper starting point because the jury may have rejected Heine's claim for $27,167.44 when it determined the award.

█ The difficulty in this case arises in determining the total payments from collateral sources because the payments involve two separate accidents with one total amount received for medical expenses. While the difficulty does not make the statute ambiguous, its application is nevertheless complicated. From the award, the district court was supposed to reduce what it determined to be the amount of collateral sources that Heine had received for the second accident. The jury's verdict of $8,000 does not necessarily directly correlate to the jury's conclusion as to the total amount of Heine's past medical expenses. The jury might have believed that Heine's claimed expenses of $27,167.44 were appropriate, but it determined that Heine was only able to prove that the second accident caused a fractional part of his injuries. But the jury also could have determined that Heine's claimed medical expenses were not reasonable. The jury had no knowledge of the collateral offset

and had no instruction to specifically apportion damages between the accidents.

The $23,214.43 of collateral source benefits paid through workers' compensation covered both accidents without an actual apportionment between the accidents. The workers' compensation judge did not have to determine apportionment of fault or causation between the two accidents. *See* Minn.Stat. § 176.021, subd. 1 (2004). But, without knowing the apportionment between the accidents, we cannot conclude how much of the $23,214.43 applies as a collateral source to the second accident.

When the district court determined that the total payments from collateral sources were $4,046.99, it appears to have been guided primarily by the statutory purpose of avoiding overcompensation as it arrived at a collateral source amount that would pay the exact amount of Heine's claimed medical expenses. But the court erred when it did this. It should not have factored Heine's claimed expenses into its calculation because the jury appears to have already rejected that figure. The court's calculation also did not apportion the $23,214.43 between the two accidents. Although determination of the proper apportionment would be difficult, the court is not supposed to follow the spirit of the law when the letter of the law is clear.

We conclude that the district court erred when it calculated Heine's award to be the exact difference between his claimed medical expenses and the medical benefits he received through workers' compensation. We therefore hold that the district court erred and reverse and remand so that the district court may apply Minn.Stat. § 548.36 in accordance with this opinion.

We note that, at oral arguments, both parties indicated that even if we remand this issue to the district court, allocating the $23,214.43 between the two accidents might be impossible. Nevertheless, we re-

mand because the court must make a determination in accordance with section 548.36. Further, we note that the statute does allow the court to "request additional written evidence or schedule a conference with the parties to obtain further evidence." Minn.Stat. § 548.36, subd. 3(b).

Affirmed in part, reversed in part, and remanded.[10]

BLATZ, C.J., took no part in the consideration or decision of this case.

ANDERSON, RUSSELL A., Justice (concurring).

I concur with the majority opinion for the reasons set forth in my concurring opinion in *Rowe v. Munye*, A03–465, 702 N.W.2d 729 (Minn. Aug. 18, 2005), released by the court today.

MEYER, Justice (dissenting).

I dissent from the majority opinion for the reasons set forth in my dissenting opinion in *Rowe v. Munye*, A03–465, 702 N.W.2d 729 (Minn. Aug. 18, 2005), released by the court today.

PAGE, Justice (dissenting).

I join in the dissent of Justice Meyer.

---

10. Simon filed a motion on June 30, 2004 to strike portions of Heine's brief. Because we have not considered any of the contested material in reaching our decision, we need not respond to Simon's allegations that the material is not properly before us.