*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1409**

Barbara Peterson,
Appellant,

vs.

HealthEast Woodwinds Hospital,
Respondent.

**Filed June 29, 2015
Affirmed
Johnson, Judge**

Ramsey County District Court
File No. 62-CV-12-1017

Richard A. Williams, Jr., Megan A. Spriggs, R.A. Williams Law Firm, P.A., St. Paul, Minnesota (for appellant)

Sara Gullickson McGrane, Jessica M. Marsh, Felhaber Larson, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Bjorkman, Presiding Judge; Johnson, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

Barbara Peterson was employed by HealthEast Woodwinds Hospital until she did not return from a leave of absence. She later commenced this lawsuit, which seeks

compensation from her former employer under various legal theories. She appeals from the district court's entry of summary judgment. We affirm.

**FACTS**

Peterson was employed by HealthEast Woodwinds Hospital from December 2002 or January 2003 until May 2010. At the end of her employment, her title was patient and family advocate. Her duties included recording patient grievances, maintaining investigation records, meeting with patients and their families, and serving on the hospital's ethics committee.

In May 2009, HealthEast restructured the department in which Peterson worked, which caused Peterson to be assigned to a different supervisor. Peterson's new supervisor directed Peterson to make various changes in the way she maintained her files. Peterson disagreed with her supervisor's directives and expressed the belief that the practices required of her were unethical and possibly unlawful. The relationship between Peterson and her new supervisor deteriorated. Peterson later testified in a deposition that she believed that she was being "pressured to leave my job and resign."

In February 2010, Peterson began a 12-week leave of absence for medical reasons. During her leave, Peterson spoke periodically with a member of HealthEast management. In March 2010, Peterson told the manager that she was looking for a job with a different employer. In May 2010, near the end of the leave period, Peterson informed the manager by telephone that she could return to work for HealthEast on a part-time basis if she were assigned to a different supervisor. The HealthEast manager responded, "No, I think you should keep pounding the pavement."

2

Peterson's leave ended on May 18, 2010. Peterson did not return to work. On June 7, 2010, Peterson called HealthEast's human resources department to ask about disability benefits and whether the company would send her a letter confirming her termination. Four days later, HealthEast sent Peterson a letter confirming that Peterson no longer was employed because her leave had expired and she had failed to return to work or to request additional leave.

In February 2012, Peterson commenced this action against HealthEast Woodwinds Hospital in the Ramsey County District Court with a five-count complaint, which alleges the following causes of action: (1) a violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-54 (2012); (2) a violation of the Minnesota Whistleblower Act, Minn. Stat. § 181.932 (2014); (3) a common-law claim of wrongful discharge in violation of public policy, *see Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569 (Minn. 1987); (4) a common-law claim of negligent infliction of emotional distress; and (5) a common-law claim of intentional infliction of emotional distress. Peterson relies on the constructive-discharge doctrine to establish that HealthEast is responsible for the termination of her employment. *See Coursolle v. EMC Ins. Grp., Inc.*, 794 N.W.2d 652, 660 (Minn. App. 2011), *review denied* (Minn. Apr. 19, 2011).

In February 2013, HealthEast removed the case to the United States District Court for the District of Minnesota. *See* 28 U.S.C. § 1446 (2012). HealthEast promptly moved for summary judgment. In June 2013, the federal district court granted HealthEast's motion for summary judgment with respect to Peterson's FMLA claim. The FMLA claim was Peterson's only federal claim and the only basis for subject-matter jurisdiction

in federal court. *See* 28 U.S.C. § 1331 (2012). The federal district court did not analyze HealthEast's motion with respect to Peterson's other claims. Rather, the federal district court declined to exercise supplemental jurisdiction over the remaining state-law claims and remanded them to state court. *See* 28 U.S.C. § 1367(a), (c) (2012).

After the remand to state court, HealthEast moved for summary judgment on the remaining state-law claims. In June 2014, the state district court granted HealthEast's motion. Peterson appeals.

## D E C I S I O N

Peterson argues that the state district court erred by granting HealthEast's motion for summary judgment on her second, third, and fifth claims. She does not challenge the district court's entry of summary judgment on her fourth claim.

A district court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the non-moving party. *Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 564 (Minn. 2008). This court applies a *de novo* standard of review to the district court's legal conclusions on summary judgment and views the evidence in the light most favorable to the non-moving party. *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 6 (Minn. 2012); *Day Masonry v. Independent Sch. Dist. 347*, 781 N.W.2d 321, 325 (Minn. 2010).

4

# I.  Retaliation Claims

Peterson first argues that the state district court erred by granting HealthEast's motion for summary judgment on her second claim, the whistleblower claim, and her third claim, the common-law claim of wrongful discharge in violation of public policy.

The district court granted HealthEast's summary-judgment motion on the ground that Peterson is collaterally estopped from re-litigating one issue that she must establish to prevail on both her statutory whistleblower claim and her common-law claim of wrongful discharge in violation of public policy.  The doctrine of collateral estoppel precludes a party from re-litigating an issue that previously was decided.[1]  *See Bublitz v. Commissioner of Revenue*, 545 N.W.2d 382, 385 (Minn. 1996).  A party seeking to invoke the doctrine must establish four requirements:

> (1) the issues in the prior and present adjudication must be identical; (2) there must have been a final adjudication on the merits; (3) the estopped party must have been a party or in privity with a party to the prior adjudication; (4) and the estopped party must have been given a fair and full opportunity to be heard on the adjudicated issue.

*Heine v. Simon*, 702 N.W.2d 752, 761 (Minn. 2005) (quoting *Haavisto v. Perpich*, 520 N.W.2d 727, 731 (Minn. 1994)).  Peterson contends that HealthEast did not satisfy the first and second requirements of the collateral-estoppel doctrine.

---

[1]The doctrine of collateral estoppel typically is applied because an issue was previously decided in a different case.  *See, e.g.*, *Burns v. Commissioner of Revenue*, 787 N.W.2d 164, 166-67 (Minn. 2010).  In this case, HealthEast relies on the federal district court's adjudication of an issue in what is essentially the same case.  Neither party has questioned the applicability of the doctrine of collateral estoppel in these circumstances.  Thus, for purposes of resolving this appeal, we assume that the doctrine applies.

## A.     First Requirement: Identical Issues

To reiterate, the first requirement of the doctrine of collateral estoppel is that "the issues in the prior and present adjudication [are] identical." *Id.* (quotation omitted).  The state district court reasoned that the federal district court previously decided the issue whether Peterson could prove that HealthEast's asserted reason for her termination was a pretext for an unlawful reason.  Peterson contends that the state district court erred in its collateral-estoppel analysis because the retaliation claim resolved by the federal district court (the FMLA claim) is different from the retaliation claims resolved by the state district court (the statutory whistleblower claim and the common-law wrongful-discharge claim) and that the various claims have different elements of proof.  In response, HealthEast contends that the issue of pretext is the same with respect to each of these three claims.

In many employment-discrimination cases, a district court considering a motion for summary judgment must follow the procedures of the so-called *McDonnell-Douglas* burden-shifting test.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).  At the first step of the test, the plaintiff-employee has the burden of introducing evidence that establishes a *prima facie* case of unlawful discrimination or retaliation.  *Id.* at 802, 93 S. Ct. at 1824.  At the second step, the burden of production shifts to the defendant-employer, who must produce evidence of a legitimate, non-discriminatory or non-retaliatory reason for its employment decision.  *Id.*  And at the third step, the burden shifts back to the plaintiff-employee, who must introduce evidence capable of satisfying the plaintiff's burden of persuasion that the employer's asserted

6

reason for its employment decision is a pretext for unlawful discrimination or retaliation. *Id.* at 804, 93 S. Ct. at 1825. A reason is a pretext if the plaintiff-employee shows "both that the reason was false, and that [the protected conduct] was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993) (emphasis omitted); *see also Hasnudeen v. Onan Corp.*, 552 N.W.2d 555, 557 (Minn. 1996) (following *Hicks* for purposes of third prong of *McDonell-Douglas* test).

Peterson's three retaliation claims have different requirements for a *prima facie* case and different elements of proof. *See Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012) (FMLA claim); *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 150 (Minn. 2014) (claim of wrongful discharge in violation of public policy); *Kratzer v. Welsh Cos.*, 771 N.W.2d 14, 18 (Minn. 2009) (statutory whistleblower claim). But all three claims are governed by the *McDonnell-Douglas* burden-shifting test. *See Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 999 (8th Cir. 2011) (applying *McDonnell-Douglas* test to FMLA claim); *Grundtner v. University of Minn.*, 730 N.W.2d 323, 329 (Minn. App. 2007) (applying *McDonnell-Douglas* test to whistleblower claim); *Phipps*, 408 N.W.2d at 572 (applying *McDonnell-Douglas* test to claim of wrongful discharge in violation of public policy). Thus, at the third step of the *McDonnell-Douglas* test, the issue is the same, regardless of the nature of the claim: whether the employer's "proffered reason was not the true reason for the employer's actions." *Hasnudeen*, 552 N.W.2d at 557.

The federal district court resolved Peterson's FMLA claim by assuming without deciding at the first step that Peterson had established a *prima facie* case and by

7

reasoning at the second step that HealthEast had submitted evidence of a legitimate, non-retaliatory reason for Peterson's termination (namely, that Peterson had failed to return to work when her leave of absence ended). At the third step, the federal district court reasoned that Peterson had not submitted evidence capable of proving that HealthEast's asserted non-retaliatory reason was false and was a pretext for an unlawful reason. *See Wierman*, 638 F.3d at 999. The state district court did not reconsider Peterson's evidence. Rather, the state district court reasoned that Peterson was precluded from satisfying her burden at the third step of the *McDonnell-Douglas* test because the pretext issue already had been decided by the federal district court. The state district court is correct. The pretext issue decided by the federal district court for purposes of Peterson's FMLA claim is identical to the pretext issue that was before the state district court for purposes of Peterson's whistleblower claim and common-law wrongful-discharge claim. For all three claims, Peterson cannot prevail unless she can establish that HealthEast's asserted reason for her termination was false and that the real reason was retaliation. *See Hicks*, 509 U.S. at 515, 133 S. Ct. at 2752; *Hasnudeen*, 552 N.W.2d at 557.

Thus, the state district court correctly concluded that the first requirement of the collateral-estoppel doctrine is satisfied. *See Heine*, 702 N.W.2d at 761; *see also Bechtold v. City of Rosemount*, 104 F.3d 1062, 1066-67 (8th Cir. 1997) (holding that issue of pretext in plaintiff's Title VII claim is same as issue of wrongful termination in plaintiff's prior certiorari review by this court).

**B.    Second Requirement: Final Adjudication on the Merits**

The second requirement of the doctrine of collateral estoppel is that "there must have been a final adjudication on the merits." *Heine*, 702 N.W.2d at 761 (quotation omitted). The state district court reasoned that the pretext issue was "fully litigated" in the federal district court. Peterson contends that the federal district court's decision on the issue of pretext was not a final adjudication on the merits because the federal district court entered a partial judgment on one count of her five-count complaint. In response, HealthEast contends that the federal district court's adjudication was final because the federal district court fully resolved the FMLA claim, entered judgment with respect to that claim, and remanded the case to the state district court.

The federal district court's order concludes by stating, "LET JUDGMENT BE ENTERED ACCORDINGLY." If a federal district court enters a partial judgment on one claim and remands the remaining state law claims pursuant to 28 U.S.C. § 1367(c), the federal district court has "nothing left to resolve and the partial summary judgment [becomes] final." *Porter v. Williams*, 436 F.3d 917, 920 (8th Cir. 2006) (holding that partial judgment on federal claim is appealable despite remand of state law claims); *see also Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 859 (8th Cir. 2000) (reviewing federal district court's grant of partial summary judgment on FMLA claim despite remand of state-law claims). Accordingly, the federal district court's resolution of the issue of pretext was final. *See Heine*, 702 N.W.2d at 761. Thus, the state district court correctly concluded that the second requirement of the collateral-estoppel doctrine is satisfied.

Because HealthEast satisfied all requirements of the doctrine of collateral estoppel, the state district court did not err by granting HealthEast's motion for summary judgment on Peterson's first and second claims.

## II. Claim of Intentional Infliction of Emotional Distress

Peterson also argues that the state district court erred by granting HealthEast's motion for summary judgment on the fifth count of her complaint, in which she alleged a claim of intentional infliction of emotional distress (IIED).

To prevail on an IIED claim, a plaintiff must prove the following four elements: "(1) the [defendant's] conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983) (citing Restatement (Second) of Torts § 46(1) (1965)). The state district court granted HealthEast's motion on the grounds that Peterson had not submitted evidence that creates a genuine issue of material fact with respect to the first element, that HealthEast's conduct was extreme and outrageous, or the third element, that HealthEast's conduct caused her emotional distress. Peterson challenges the state district court's reasoning with respect to both the first and the third elements of her claim.

## A. First Element: Extreme and Outrageous Conduct

A plaintiff seeking to prove an IIED claim must satisfy the first element of the claim by proving that the defendant's conduct was "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* at 439 (quotations omitted). IIED claims are "'sharply limited to cases involving particularly

egregious facts.'"  *Singleton v. Christ the Servant Evangelical Lutheran Church*, 541 N.W.2d 606, 614 (Minn. App. 1996) (quoting *Hubbard*, 330 N.W.2d at 439), *review denied* (Minn. Mar. 19, 1996).  This is a high standard and especially difficult to meet in a case arising from the workplace.  *See Hubbard*, 330 N.W.2d at 439-40.

The state district court resolved this part of Peterson's IIED claim by reasoning that, even if Peterson could prove that HealthEast directed her to take actions that would violate the law, HealthEast's actions would "not rise to the level of extreme and outrageous conduct."  The state district court also reasoned that, even if Peterson's supervisor "continually berated [her] and questioned [her] competency at her job, reprimanding, suspending, or terminating an employee—regardless of the reason—does not satisfy the high standard required on a claim of IIED."  The state district court is correct.  "Written and verbal criticism" of an employee's job performance, even if improper for other reasons, generally is insufficient to constitute outrageous conduct for purposes of an IIED claim.  *Hubbard*, 330 N.W.2d at 439-40.  Furthermore, asking an employee to engage in unethical or potentially unlawful conduct does not rise to the level of "extreme and outrageous" conduct to support an IIED claim, even though it may be wrong for other reasons.  *See Dowell v. Contra Costa Cnty.*, 928 F. Supp. 2d 1137, 1156-57 (N.D. Cal. 2013) (holding that employer did not engage in "outrageous" conduct by allegedly asking employee to use unlawful timekeeping practices); *Darrow v. Dillingham & Murphy, LLP*, 902 A.2d 135, 139 (D.C. 2006) (holding that employer did not engage in "extreme and outrageous" conduct by allegedly retaliating against employee for refusing to participate in unlawful billing).

11

Thus, the state district court correctly concluded that Peterson did not create a genuine issue of material fact with respect to the first element of her IIED claim.

**B.      Third Element: Causation**

A plaintiff seeking to prove an IIED claim also must satisfy the third element of the claim by proving that the defendant's conduct caused her emotional distress. *Hubbard*, 330 N.W.2d at 438-39; *Odegard v. Finne*, 500 N.W.2d 140, 144 (Minn. App. 1993) (affirming grant of summary judgment to defendant on IIED claim because plaintiff "failed to present any evidence linking her alleged damages to any actions" of defendant).  In general, a plaintiff's own testimony is "not sufficient to establish a causal connection" between the defendant's conduct and the plaintiff's emotional distress. *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 869 (Minn. 2003).  This is so because a person's emotional distress may have multiple and complex causes.  *Id.*  Accordingly, "[t]he appropriate method of proving the . . . causation of emotional distress is through medical testimony." *Id.* at 870

The state district court resolved this part of Peterson's IIED claim by reasoning that she failed to submit any evidence that HealthEast's actions caused her emotional distress.  Peterson contends, without citation to the record, that she submitted her therapy records.  Our review of the district court record, however, reveals Peterson's deposition testimony but no therapy records.  In her deposition, Peterson testified that she has suffered from depression for 15 years.  The medical evidence in the record is insufficient to allow Peterson to create a genuine issue of material fact as to whether HealthEast's

conduct (even if extreme and outrageous) caused her to experience emotional distress. *See id.*

Thus, the state district court correctly concluded that Peterson did not create a genuine issue of material fact with respect to the third element of her IIED claim.

Because Peterson cannot prove all elements of her IIED claim, the state district court did not err by granting HealthEast's motion for summary judgment on Peterson's fifth claim.

**Affirmed.**